FARMERS AND MECHANICS SAVINGS BANK *v.*
MARTIN F. SULLIVAN ET AL.
(13629)

PETERS, C. J., SHEA, CALLAHAN, GLASS, COVELLO, HULL and BORDEN, Js.

Argued January 31 and May 29—decision released August 21, 1990

*Robert W. Heagney,* with whom were *Thomas C. Austin, Jr.,* and, on the brief, *Ronald P. Sherlock,* for the appellants (named defendant et al.).

*Rodger C. Boe,* with whom, on the brief, was *Donna M. Case-Rossato,* legal intern, for the appellees (defendant Peter H. Wirtz et al.).

*Gregory M. Harris,* for the appellees (defendant Michael F. Sullivan et al.).

*Stanley M. Krupa,* for the appellee (plaintiff).

SHEA, J. The dispositive issue in this appeal is whether the trial court erred when it denied a motion to open and modify a judgment of strict foreclosure pursuant to General Statutes § 49-15.[2] We conclude that the motion should have been granted and accordingly reverse.

The relevant facts are not in dispute. On May 15, 1986, the defendants Martin F. and Patricia M. Sullivan (younger Sullivans) executed a mortgage deed on

---

[2] "[General Statutes] Sec. 49-15. OPENING OF JUDGMENTS OF FORE-CLOSURE. Any judgment foreclosing the title to real estate by strict fore-closure may, at the discretion of the court rendering the same, upon the written motion of any person having an interest therein, and for cause shown, be opened and modified, notwithstanding the limitation imposed by section 52-212a, upon such terms as to costs as the court deems reasonable; but no such judgment shall be opened after the title has become absolute in any encumbrancer."

their property located in East Hampton to the plaintiff, Farmers and Mechanics Savings Bank, to secure a promissory note in the amount of $72,000. In December, 1986, the defendants Peter H. and Laura B. Wirtz (Wirtzes) recorded in the land records a contract to purchase the property for $116,000. In February, 1987, the defendants Michael F. and Cleasse G. Sullivan (elder Sullivans) recorded a mortgage deed of the property to secure a purported $60,000 loan to the younger Sullivans. Later that month the Wirtzes recorded a lis pendens and a certificate of attachment for $30,000 which related to an action brought by the Wirtzes against the younger Sullivans for breach of the contract for sale of the property.

On October 6, 1987, the plaintiff bank commenced an action to foreclose its mortgage. On November 23, 1987, a default was entered against the younger Sullivans, the owners of the equity, for failure to appear. On the same day the plaintiff filed a motion for a judgment of strict foreclosure. On January 19, 1988, the trial court granted the plaintiff's motion and set law days of February 29, 1988, through March 4, 1988. The court found that the fair market value of the property was $170,000 and the debt owed to the plaintiff was $80,663.91. At this point, the younger Sullivans still had not appeared in the action.

On February 8, 1988, the elder Sullivans filed a motion to open and modify the judgment of strict foreclosure. Their motion was not heard prior to the passing of the law days. On March 4, 1988, the Wirtzes satisfied the judgment by paying the plaintiff $82,013.91 in order to redeem their interest. Thereafter the plaintiff filed a satisfaction of judgment. The younger Sullivans filed their appearance on March 14, 1988, and, at the same time, filed a motion to open and modify the judgment of strict foreclosure. Later, on

May 20, 1988, they filed a motion to set new law days. All the motions of both the younger and elder Sullivans were heard on June 2, 1988, and denied by the trial court on July 22, 1988. On August 11, 1988, the younger Sullivans appealed the denial of their motions and the judgment of strict foreclosure rendered January 19, 1988, to the Appellate Court. The elder Sullivans, however, did not appeal. The Wirtzes filed a motion to dismiss the appeal, which was denied by the Appellate Court on November 3, 1988. We thereafter transferred the appeal to this court pursuant to Practice Book § 4023. We conclude that the trial court should have granted the younger Sullivans' motion to open the judgment of strict foreclosure and remand the case with direction to open the judgment and to order a foreclosure by sale.

The trial court denied the motion to open the judgment of strict foreclosure on three grounds: (1) the exercise by the Wirtzes of their right to redeem by payment of the mortgage debt on March 4, 1988, under the terms of the judgment, vested them with absolute title to the property, so that § 49-15 thereafter prohibited opening the judgment; (2) the failure of the elder Sullivans to have their motion acted upon before the law days had passed rendered their motion ineffective to activate the automatic stay provided by Practice Book § 4046; and (3) a strict foreclosure was appropriate because it was the only way to protect the Wirtzes' right to specific performance of their contract to purchase the property. On appeal the Wirtzes advance essentially the same reasons for affirming the judgment, but also claim that the delay of the younger Sullivans in filing their motions until after the Wirtzes had redeemed should bar relief under the doctrine of laches.

I

As the trial court noted, § 49-15, which allows the opening of a judgment of strict foreclosure "upon the

written motion of any person having an interest therein, and for cause shown," provides that "no such judgment shall be opened after the title has become absolute in any encumbrancer." We have held that to open a judgment after the time fixed in the statute is erroneous but that the error may be waived. *Ferguson* v. *Sabo,* 115 Conn. 619, 622–23, 162 A. 844 (1932). If title had become absolute in the Wirtzes as a result of their payment of the mortgage debt on March 4, 1988, the trial court would not have been authorized, without a waiver, to grant a motion to open the foreclosure judgment after that date.

Because the elder Sullivans filed their motion to open the judgment within the twenty days allowed for an appeal, however, "the period of time for filing an appeal [would] commence from the issuance of notice of the decision upon the motion." Practice Book § 4009.[3] The filing of that motion also activated the automatic stay under Practice Book § 4046,[4] providing that "proceed-

[3] "[Practice Book] Sec. 4009. (Formerly Sec. 3007). TIME TO APPEAL.

"The party appealing shall, within twenty days, except where a different period is provided by statute, from the issuance of notice of the rendition of the judgment or decision from which the appeal is taken file an appeal in the manner prescribed by Sec. 4012; but if within the appeal period any motion is filed which, if granted, would render the judgment or decision ineffective, as, for example, a motion to open the judgment or to set aside the verdict or for judgment notwithstanding the verdict, the period of time for filing an appeal shall commence from the issuance of notice of the decision upon the motion or the expiration of the time within which a remittitur is ordered filed. . . .

"The time for filing the appeal or for taking any of the steps necessary to prosecute or defend the appeal, as hereinafter provided, may be extended in accordance with the provisions of Sec. 4040."

[4] "[Practice Book] Sec. 4046. (Formerly Sec. 3065). [AUTOMATIC STAY OF EXECUTION] —IN GENERAL

"In all actions, except where otherwise provided by statute or other law, proceedings to enforce or carry out the judgment shall be automatically stayed until the time to take an appeal has expired; if an appeal is filed, such proceedings shall be stayed until the final determination of the cause; and, if the case goes to judgment in the supreme court, until ten days after the decision is announced; but if the judge who tried the case is of the opin-

ings to enforce or carry out the judgment shall be automatically stayed until the time to take an appeal has expired." The effect of these provisions was to stay the enforceability of the foreclosure judgment until the motion of the elder Sullivans was decided on July 22, 1988. Because of this automatic stay, the Wirtzes could not have acquired title to the property pursuant to the judgment when they paid the mortgage debt.

This court has often recognized that the law days established in a foreclosure judgment are ineffective while an appeal is pending. In *Zinman* v. *Maislen,* 89 Conn. 413, 94 A. 285 (1915), the holding of the court is summarized in the headnote as follows: "The seasonable filing of a notice of appeal . . . operates as a stay of further proceedings under a judgment of foreclosure; and therefore, pending such appeal, the parties respondent are not obliged to redeem on or before the expiration of the law-day fixed by the judgment, nor can the plaintiff, under such circumstances, acquire title absolute under a certificate of foreclosure." "Upon the filing of [the defendant's] appeal . . . Practice Book [1934] § 366,[5] became operative to stay further

ion that an extension to appeal is sought or the appeal is taken only for delay or that the due administration of justice so requires that judge may at any time, upon motion and hearing, order that the stay be terminated. This section shall not apply to actions concerning attorneys pursuant to chapter 2, to periodic alimony and support orders, as well as to custody or visitation orders in domestic relations matters brought pursuant to chapter 17, to criminal matters brought pursuant to chapter 22 through 30 or to juvenile matters brought pursuant to chapters 31 through 40. . . ."

[5] "[Practice Book (1934)] Sec. 366. STAY OF EXECUTION

"In all civil actions, execution shall be stayed for two weeks after final judgment; and if an appeal be filed, or a notice of appeal as provided in Sec. 368, then execution shall be stayed until the final determination of the cause; but if the judge trying the same is of the opinion that the appeal is taken only for delay, or that the due administration of justice requires it, he may order execution at any time upon motion and hearing.

"If a stay of execution has been ordered by a trial court and this court shall, upon appeal, advise that no new trial be granted, or decide that there

proceedings under the judgment . . . precluding the passage of title upon any of the law days provided for in that judgment." *Milford Trust Co.* v. *Greenberg,* 137 Conn. 277, 278, 77 A.2d 80 (1950). "Because of delays incident to the legal process of appeal, the judgment of the trial court became ineffective in an essential respect, and what is in effect a new judgment became necessary." *Hartford National Bank & Trust Co.* v. *Tucker,* 195 Conn. 218, 222, 487 A.2d 528, cert. denied, 474 U.S. 875, 106 S. Ct. 135, 88 L. Ed. 2d 111 (1985). Practice Book § 340[6] recognizes the necessity for setting new law days or other dates for performance of acts specified in a judgment that is affirmed on appeal. "This court has on occasion itself set new law days in similar situations," but ordinarily leaves this to the trial court on remand. *Tilden* v. *Century Realty Co.,* 112 Conn. 439, 442, 152 A. 707 (1930). The view of the trial court that the law days established by the foreclosure judgment in this case, which were stayed while the motion of the elder Sullivans was pending, could be given effect, and that title had already vested in the Wirtzes by the time that motion was heard is wholly at variance with these precedents as well as the express provisions of our rules of practice.

## II

The trial court declared that the failure of the elder Sullivans to have their motion to open heard and decided before the law days had passed meant that

has been no error, any judge of the court which ordered the stay may release it by giving a written order to that effect to the clerk, who shall file it with the papers in said cause, and thereupon issue such execution.

"Such stay applies to every judgment in a civil action providing for the recovery of damages or requiring the performance of an act."

[6] "[Practice Book] Sec. 340. MODIFYING JUDGMENT AFTER APPEAL

"If a judgment fixing a set time for the performance of an act is affirmed on appeal by the supreme court and such time has elapsed pending the appeal, the court which rendered the judgment appealed from may, on motion and after due notice, modify it by extending the time."

those law days remained in effect. The court relied on this statement in a treatise: "A critical factor to be recognized in connection with a motion to reopen a judgment of strict foreclosure is that the motion must be heard, and not merely filed, prior to the vesting of title." D. R. Caron, Connecticut Foreclosures (2d Ed.) § 9.01C. This observation would be correct if limited to a motion made after the expiration of the time to appeal from the initial foreclosure judgment, because no automatic stay would result from its filing. In a later section of his treatise, the same commentator confirms the general understanding of the bar that, when a timely motion to open the judgment is filed, "any redemption . . . would be violative of the automatic stay, and any title derived through such stayed proceedings would be subject to defeasance." Id., § 17.06.[7]

Apart from the plain applicability to the elder Sullivans' motion of § 4046, which automatically stays proceedings "to enforce or carry out the judgment," it must be remembered that an attempt to schedule a hearing on the motion was made before the law days had run, but the hearing was postponed until afterward with the full knowledge of the Wirtzes. After the younger Sullivans had filed their motion to open, the court requested a transcript of the earlier proceeding, which resulted in delaying the hearing until June 2,

---

[7] "If a motion to reopen judgment is filed during the appeal period, the time for filing the appeal then commences from the issuance of notice of the decision on the motion, as provided in P.B. § 4009 (Rules of the Supreme Court). This rule can have profound effects on a foreclosure decree, since P.B. § 4046 stays 'proceedings to enforce or carry out the judgment. . . . until the time to take an appeal has expired.' Thus, law days in a strict foreclosure cannot run, or a sale cannot take place, if a motion to reopen was filed during the appeal period but has yet to be ruled upon; any redemption or auction under such circumstances would be violative of the automatic stay, and any title derived through such stayed proceedings would be subject to defeasance." D. R. Caron, Connecticut Foreclosures (2d Ed.) § 17.06.

1988. It does not appear that either the elder Sullivans or the Wirtzes objected to this delay. All parties were entitled to assume, therefore, that the law days set in the initial judgment would be ineffective while the motions were pending, because of the automatic stay provided by § 4006.

## III

The Wirtzes claim that lack of reasonable diligence to protect their interests on the part of the younger Sullivans, who failed to appear in the foreclosure action until March 14, 1988, after the Wirtzes had paid the mortgage debt, under the equitable doctrine of laches, should preclude granting the relief sought in their motion to open the foreclosure judgment. The trial court did not refer in its memorandum to laches as a basis for its decision and made no findings on that subject. The record does not disclose whether laches was raised in the trial court as a ground for denying the younger Sullivans' motion.

"Laches consists of an inexcusable delay which prejudices the defendant." *Danaher* v. *C. N. Flagg & Co.,* 181 Conn. 101, 107, 434 A.2d 944 (1980). "First, there must have been a delay that was inexcusable, and, second, that delay must have prejudiced the defendant." *Kurzatkowski* v. *Kurzatkowski,* 142 Conn. 680, 685, 116 A.2d 906 (1955). "A conclusion by the trial court that a party has been guilty of laches is one of fact for the trier and not one that can be made by this court, unless the subordinate facts found make such a conclusion inevitable as a matter of law." *Danaher* v. *C. N. Flagg & Co.,* supra. In this case the absence of any findings relevant to the issue of laches limits our review to determining whether laches must be found upon the record as a matter of law.

We need not decide whether the delay of the younger Sullivans in filing their motion until ten days after the

Wirtzes had attempted to redeem the property was suf-
ficiently flagrant as to be inexcusable, because we are
convinced that the record does not establish as a mat-
ter of law that the delay was prejudicial. This delay
cannot reasonably be regarded as prejudicial to the
Wirtzes, because the motion of the elder Sullivans,
which was timely filed, was still pending.[8] That motion
invoked the automatic stay provisions of § 4046, which
resulted in vitiating the law days for redemption upon
which the Wirtzes erroneously relied. The delayed entry
of the younger Sullivans into the foreclosure action did
not worsen the predicament the Wirtzes had created
by assuming they could acquire title pursuant to a judg-
ment not then enforceable. The Wirtzes do not claim
that they would have acted differently if the younger
Sullivans, like the elder Sullivans, had filed their motion
before the law days set in the judgment. Nor does the
failure of the elder Sullivans to appeal mean that the
delay of the younger Sullivans has now resulted in prej-
udice to the Wirtzes that was not extant previously.
Whether the Wirtzes were prejudiced by the delay of
the younger Sullivans must be resolved on the basis
of the record at the time of the trial court's ruling. The
circumstance that only the younger Sullivans appealed
is irrelevant to that determination.

## IV

Before considering whether the trial court's denial
of the younger Sullivans' motion was justified on the
merits, we must examine the procedural vehicle used
to present their claim to the trial court.

---

[8] For the same reason, the reference in the dissenting opinion to "[o]ver-
crowded dockets" and "justice delayed"; *In re Mongillo,* 190 Conn. 686,
690–91, 461 A.2d 1387 (1983); are inappropriate. The filing of the younger
Sullivans' motion never produced any trial court delay beyond that result-
ing from the pendency of the motion of the elder Sullivans, which had been
timely filed.

Section 49-15 has the remedial purpose of providing relief to property owners and their creditors when this can be done without jeopardizing the security interest of the foreclosing mortgagee. It has often been utilized in the trial courts to extend law days or to convert a strict foreclosure to a foreclosure by sale when, at the time of the decision upon the motion to open, it appeared that a modification of the terms of the original judgment would produce a more equitable result. See *City Lumber Co. of Bridgeport, Inc.* v. *Murphy,* 120 Conn. 16, 26, 179 A. 339 (1935). Frequently strict foreclosures are ordered, despite a property appraisal substantially higher than the mortgage debt, because the owner believes he will be able to redeem and he seeks to avoid the additional expense involved in a foreclosure by sale. An owner, who subsequently seeks modification to allow a foreclosure by sale, after his hopes of redemption have not been realized, is not barred from relief under § 49-15 simply because the original judgment may be unassailable, based upon the circumstances existing when it was rendered. The design of § 49-15 is to authorize a court, before a redemption pursuant to a strict foreclosure has occurred, to modify the terms of the judgment in order to achieve an outcome fairer to the parties than provided by the original judgment in light of conditions as they appear when the motion to open is decided.

Unlike General Statutes § 52-212, which provides for opening default judgments generally and requires a defaulted defendant to show that he had a good defense that he was prevented from making by "mistake, accident or other reasonable cause," § 49-15 prescribes only four conditions for opening a judgment of strict foreclosure: (1) that the motion be in writing; (2) that the movant be a person having an interest in the property; (3) that the motion be acted upon before an encum-

brancer has acquired title; and (4) that "cause," obviously good cause, be shown for opening the judgment.

It is clear that the motion of the younger Sullivans was in writing. From our previous discussion of the automatic stay created by § 4046, which became effective when the elder Sullivans filed their motion to open, it follows that the younger Sullivans have continued to retain an ownership interest in the property, the law days set in the judgment being of no force as a result of the stay. Consequently, title had not become "absolute in any encumbrancer" at the time the trial court acted upon their motion to open.

In compliance with the final requirement of § 49-15 for a showing of good cause to open the foreclosure judgment, the younger Sullivans alleged facts supported by the record, none of which have been disputed. As the trial court had found, the fair market value of the property was $170,000, while the mortgage debt with attorney's fees and other expenses amounted to $82,013.91, leaving a balance of $87,986.09 available for the younger Sullivans and their creditors. The motion pointed out that, if the Wirtzes were permitted to redeem by paying the mortgage debt, as the strict foreclosure judgment provided, they would receive a windfall of approximately $34,000, because they would acquire for $82,013.91 property for which they had agreed in the bond for deed to pay $116,000. The younger Sullivans also alleged that, in allowing the Wirtzes to redeem the property on the basis of the bond for deed they had filed in the land records, which was in litigation between the parties thereto, the strict foreclosure judgment gave the property to the Wirtzes "at a bargain price without having to prove the validity of their claim at all."

In the memorandum of decision and later articulation thereof denying the motions of both the elder and

younger Sullivans, the trial court, in addition to relying upon the procedural grounds relating to redemption of the property by the Wirtzes that we have rejected, concluded that the motions should be denied on the merits. The court indicated that the strict foreclosure had been ordered because it was the only way in which the contractual right of the Wirtzes to purchase the property for $116,000 could be preserved. The court feared that if a foreclosure by sale were ordered, the Wirtzes would not be able to purchase the property at the appraisal price of $170,000 that might result from such a sale. The memorandum, however, offers no explanation for permitting the Wirtzes to acquire for $82,013.91 property they had agreed to purchase for $116,000 and for ignoring the interests of the younger Sullivans and their creditors in receiving the fair market value of the property that a foreclosure by sale might have achieved. No mention is made of the problems created by giving a right of redemption to a purchaser under a bond for deed that is the subject of litigation still to be resolved.[9]

Since a mortgage foreclosure is an equitable proceeding, either a forfeiture or a windfall should be avoided if possible. "In a foreclosure proceeding the trial court must excercise its discretion and equitable powers with fairness not only to the foreclosing mortgagee, but also to subsequent encumbrancers and the owner." *Fidel-*

---

[9] The strict foreclosure judgment contained the standard language that upon payment of the mortgage debt "by any defendant, after all subsequent parties in interest have been foreclosed, the title to the premises shall vest absolutely in the defendant making such payment, subject to such unpaid encumbrances, if any, as precede the interest of the redeeming defendant." It is far from clear that, if the Wirtzes had redeemed effectively, they would have remained liable on their contract to pay the difference between the contract price and the sum paid to redeem the property, as the trial court and the dissenting opinon assume. It would be inappropriate to address this question at this time, especially in view of the unresolved litigation concerning the enforceability of the contract of sale.

*ity Trust Co.* v. *Irick,* 206 Conn. 484, 490, 538 A.2d 1027 (1988). "In Connecticut, the law is well settled that whether a mortgage is to be foreclosed by sale or by strict foreclosure is a matter within the sound discretion of the trial court." *Hartford Federal Savings & Loan Assn.* v. *Tucker,* 196 Conn. 172, 184, 491 A.2d 1084, cert. denied, 474 U.S. 920, 106 S. Ct. 250, 88 L. Ed. 2d 258 (1985). This discretion, however, is a legal one that must be exercised in accordance with equitable principles in fairness to all the parties without impairment of the security of the foreclosing mortgagee. We recently found an abuse of such discretion in the failure to order a foreclosure by sale when a sale would have resulted in making approximately $10,000 available to a subsequent encumbrancer and thus reduced the indebtedness of the owner. *Fidelity Trust Co.* v. *Irick,* supra, 488–89.

In this case it is undisputed that the fair market value of the foreclosed property exceeded the mortgage debt by approximately $88,000. The only justification offered by the trial court for allowing this forfeiture to occur was to preserve the right of the Wirtzes to specific performance of their contract to purchase the property. Under the strict foreclosure judgment, however, the Wirtzes were allowed to acquire the property for approximately $34,000 less than provided in the purchase agreement, the enforceability of which had not been determined. Even if there had been no such dispute, the equitable remedy of specific performance is not automatic but rests within judicial discretion. 3 Restatement (Second), Contracts § 357, comment c. "[I]t is subject to principles of common sense [and] a court may take into consideration the public interest." Id. In a foreclosure proceeding in which several parties have an interest in the property, the rights of a contract purchaser cannot be exalted over those of others.

Good cause for opening a foreclosure pursuant to § 49-15, however, cannot rest entirely upon a showing that the original foreclosure judgment was erroneous. Otherwise that statute would serve merely as a device for extending the time to appeal from the judgment.[10] Unlike the elder Sullivans, whose motion to open, filed within the time allowed for an appeal from the original judgment, extended their time to appeal from that judgment until twenty days after the decision on their motion; Practice Book § 4009; the younger Sullivans could no longer have appealed from the original judgment at the time they filed their § 49-15 motion. Although they purport to have appealed from that judgment as well as the judgment denying their motion to open, only the latter appeal is viable. *First National Bank* v. *Ferguson,* 129 Conn. 374, 377, 28 A.2d 87 (1942).

Although the trial court denied the motion of the elder Sullivans for a foreclosure by sale at the time the

----

[10] In *First National Bank* v. *Ferguson,* 129 Conn. 374, 376, 28 A.2d 87 (1942), this court, in considering whether an appeal may be taken from the refusal of a trial court to open a judgment of strict foreclosure, declared: "If an appeal would lie from such a ruling, it would be because the grounds upon which relief was claimed arose after the time to appeal from the original judgment of foreclosure had passed." The per curiam opinion does not refer to General Statutes § 49-15 and appears to rely primarily upon *Daland's Application,* 81 Conn. 249, 70 A. 449 (1908), a case decided before the enactment of § 49-15 in 1923, in which an appeal from the denial of a motion to open filed after expiration of the time to appeal from the original foreclosure judgment was dismissed.

We regard § 49-15 as establishing a statutory right, independent of the right to appeal from the original foreclosure judgment, from the erroneous denial of which a party may appeal as from any final judgment. See *Melillo* v. *Spiro,* 187 Conn. 333, 445 A.2d 921 (1982) (deciding appeal from denial of motion to extend law day on merits). Although such an appeal cannot be entirely congruent with an appeal from the original foreclosure judgment and must in part be based upon circumstances not previously presented, the essential question in such an appeal remains whether a modification of the original judgment was warranted in light of the situation existing at the time the motion to open was heard. The terms of the original judgment necessarily must be considered in making this determination, whether or not that judgment may have been erroneous when rendered.

judgment of strict foreclosure was rendered, the younger Sullivans, the owners of the property, had then neither filed such a motion nor appeared. A court might well have assumed from their inaction that they had no objection to a strict foreclosure. When their motion to open was heard, however, it was evident that they sought a foreclosure by sale because they had "not the means to redeem" as their motion alleged. The fact that the owners were seeking a foreclosure by sale because they were unable to redeem was a circumstance not previously considered by the court that warranted a fresh evaluation of the situation, which § 49-15 authorized the court to conduct. Whatever the merits of the original judgment at the time it was rendered, the court was not justified in adhering to it unless a strict foreclosure was still warranted. Thus the younger Sullivans did satisfy the requirement of § 49-15 for a showing of good cause not based wholly upon the impropriety of the original judgment. We conclude that the trial court abused its discretion by refusing to open that judgment to provide for a foreclosure by sale.

Upon remand we direct the trial court to modify the judgment to order a foreclosure by sale, unless the court should determine that there is insufficient equity above the first mortgage to justify the additional expense involved under current market conditions. In allocating the proceeds of such a sale, the trial court must take into account the equitable position of the Wirtzes by virtue of their payment of the mortgage debt and any improvements or other expenses that have benefited the property and enhanced its market value, subject to a fair allowance for their occupancy of the property.

The judgment of the trial court is reversed and the case is remanded for further proceedings in accordance with this opinion.

In this opinion PETERS, C. J., GLASS, HULL and BORDEN, Js., concurred.

CALLAHAN, J., with whom COVELLO, J., joins, dissenting. The granting of relief pursuant to General Statutes § 49-15 lies within the sound discretion of the trial court.[1] Here the trial court, in the exercise of its discretion, refused to open its judgment of strict foreclosure. The trial court exercised its discretion in this fashion only after it had determined that the younger Sullivans had failed to assert any ground to open the judgment that could not have been brought to its attention before judgment entered and the Wirtzes redeemed. Because, on this record, I feel that the court's action was a reasonable exercise of its discretion, I cannot agree with the majority opinion.

The record reveals that the bank commenced this foreclosure proceeding on October 6, 1987. On November 23, 1987, the younger Sullivans were defaulted for failure to appear. On January 19, 1988, the trial court granted the plaintiff's motion for summary judgment and ordered a strict foreclosure. The trial court scheduled the law days for February 29 through March 4, 1988, in order to allow for the passage of the appeal period and to give the parties "a reasonable period of time to make any arrangements that are necessary." On their law day of March 4, 1988, the Wirtzes redeemed. It was only *after all this had transpired* that the younger Sullivans appeared, on March 14, 1988, for the first time and filed their motion to open the judgment.

Further, the transcript of the June 2, 1988 hearing on the Sullivans' motions to open clearly reveals that

---

[1] "[General Statutes] Sec. 49-15. OPENING OF JUDGMENTS OF FORE-CLOSURE. Any judgment foreclosing the title to real estate by strict foreclosure may, *at the discretion of the court* rendering the same, upon the written motion of any person having an interest therein, and for cause shown, be opened and modified, notwithstanding the limitation imposed by section 52-212a, upon such terms as to costs as the court deems reasonable; but no such judgment shall be opened after the title has become absolute in any encumbrancer." (Emphasis added.)

*the elder Sullivans' motion "was never heard or sched-
uled prior to the original law days."* (Emphasis added.)
The trial judge stated, "I waited for a call and nobody
followed through to set up a date for a hearing on it;
that's my recollection." The elder Sullivans' attorney
stated, "There was, as Your Honor recalls, an abor-
tive attempt to schedule it before [the law days] had
run, and an attorney [for the Wirtzes] was down here
that day but it was never heard or scheduled prior to
the original law days." It was not until after the
younger Sullivans had belatedly filed their motion to
open the judgment *after the law days had passed,* that
the court requested a "copy of the transcript with
regard to the motion for summary judgment which was
held on January 19th, 1988." Although the record does
not reflect why the elder Sullivans failed to schedule
an earlier hearing, it does reflect that the Wirtzes
"were always ready, willing and able to argue the
motion."

I

At the hearing before the trial court on June 2, 1988,
the Wirtzes objected to the younger Sullivans' motion
to open the judgment, asserting that: (1) they had paid
the bank and had secured their own mortgage; (2) they
had made improvements to the property; (3) the elder
Sullivans should have pressed their motion to open prior
to the passing of the law days; and (4) the younger Sul-
livans had not filed their motion to open the judgment
until after the law days had passed and after they had
redeemed. In view of the Wirtzes' objections, the trial
court perceived a "laches problem" because the
younger Sullivans failed to cite a single legitimate rea-
son as to why they had not appeared or why the elder
Sullivans' "motion wasn't pressed and heard before the
law days." The trial court stated, "That's one of the
big problems with the case. You see, Mr. Heagney [the

younger Sullivans' attorney] comes in here after everything has happened and that's the major problem he has."

"One who seeks equity must also do equity and expect that equity will be done for all." *LaCroix* v. *LaCroix,* 189 Conn. 685, 689, 457 A.2d 1076 (1983). "Because a mortgage foreclosure action is an equitable proceeding, the trial court may consider all relevant circumstances to ensure that complete justice is done. *City Savings Bank* v. *Lawler,* 163 Conn. 149, 155, 302 A.2d 252 (1972); *Hartford Federal Savings & Loan Assn.* v. *Lenczyk,* 153 Conn. 457, 463, 217 A.2d 694 (1966)." *Reynolds* v. *Ramos,* 188 Conn. 316, 320, 449 A.2d 182 (1982). "The determination of what equity requires in a particular case, the balancing of the equities, is a matter for the discretion of the trial court." *Kakalik* v. *Bernardo,* 184 Conn. 386, 395, 439 A.2d 1016 (1981); *Reynolds* v. *Ramos,* supra. "When we review the exercise of discretion by the trial court, every reasonable presumption will be given in favor of the correctness of its ruling." *Reynolds* v. *Ramos,* supra, 320–21.

"It is a well-established principle that courts of equity will not relieve against the operation of judgments rendered through the negligence or inattention of the party claiming to be aggrieved . . . ." *Jarvis* v. *Martin,* 77 Conn. 19, 21, 58 A. 15 (1904); *Norwich* v. *Lebanon,* 193 Conn. 342, 349 n.6, 477 A.2d 115 (1984); *Cavallo* v. *Derby Savings Bank,* 188 Conn. 281, 285, 449 A.2d 986 (1982); *Duncan* v. *Milford Savings Bank,* 134 Conn. 395, 402, 58 A.2d 260 (1948). All of the facts set forth in the younger Sullivans' motion to open the trial court's judgment were available to them prior to the rendition of the judgment. Their arguments, on the basis of those facts, could have and should have been made to the court before it entered judgment. The unexplained failure of the younger Sullivans to move

to open the judgment of strict foreclosure in a timely fashion "is an insufficient ground upon which to open the judgment at a later date." *Hartford Federal Savings & Loan Assn.* v. *Stage Harbor Corporation,* 181 Conn. 141, 144, 434 A.2d 341 (1980) (denial of motion to open the judgment of strict foreclosure).[2] The theory underlying the rules governing the opening of judgments is the equitable principle that once a judgment is rendered it is to be considered final; see *In re Juvenile Appeal (83-DE),* 190 Conn. 310, 318, 460 A.2d 1277 (1983); 2 E. Stephenson, Conn. Civ. Proc. § 207, p. 863; and "should be left undisturbed by post-trial motions except for a good and compelling reason. 2 Restatement (Second), Judgments § 78, comment c." *Steve Viglione Sheet Metal Co.* v. *Sakonchick,* 190 Conn. 707, 713, 462 A.2d 1037 (1983). There is no such reason here.

## II

The majority purports to find an abuse of discretion in the trial court's refusal to open the judgment of strict foreclosure because it claims that the court ignored the "interests of the younger Sullivans and their creditors in receiving the fair market value of the property that a foreclosure by sale might have achieved." This view, however, ignores pertinent portions of the trial court's memorandum of decision.

First, the "creditors" that the trial court purportedly ignored are the elder Sullivans. After the Wirtzes recorded the bond for deed in the land records, however, all subsequent encumbrancers, including the elder

---

[2] " 'Overcrowded dockets have become a major problem challenging the ability of the courts of this state and elsewhere to dispense justice. It is well known that justice delayed is justice denied. . . . Our judicial system cannot be controlled by the litigants and cases cannot be allowed to drift aimlessly through the system. . . .' " *Gionfrido* v. *Wharf Realty, Inc.,* 193 Conn. 28, 32–33, 474 A.2d 787 (1984), quoting *In re Mongillo,* 190 Conn. 686, 690–91, 461 A.2d 1387 (1983).

Sullivans, had notice of the Wirtzes' contractual right to purchase the property for $116,000. Having recorded their bond for deed before the elder Sullivans' mortgage, the Wirtzes' contract claim had priority over the secured interest of the elder Sullivans. The trial court stated: "At the time [the elder Sullivans] granted the $60,000 mortgage to their son, they were well aware that Farmers & Mechanics Savings Bank had a mortgage for well over $70,000 and they were also well aware that their son had already contracted to sell the home to the [Wirtzes] for $116,000, thereby indicating equity of much less than $60,000."

Further, contrary to the majority's assertion, the trial court, in its memorandum of decision, recognized and considered the problems of ordering a strict foreclosure rather than a foreclosure by sale. The trial court determined, however, that if it ordered a foreclosure by sale the Wirtzes might lose their right to purchase *this particular piece of property* if they were not the highest bidder. The trial court stated: "The Wirtzes and the Sullivans entered into a contract to sell a home for a specific price as referenced in the bond for deed. There has been no evidence presented to indicate that this was not an [arm's] length transaction. If the Wirtzes were prevented from buying that specific piece of property for the specific price agreed to, by an order of a sale foreclosure it would be apparent that the equitable interests of the Wirtzes would not be properly protected."

The trial court also stated: "At first sight there is a discrepancy . . . between the price paid by the Wirtzes, $82,013.91 and the purchase price agreed to of $116,000. This [difference] is the amount that [the elder Sullivans] may have reasonably expected they had a right to when they gave a mortgage to [the younger Sullivans]. Pursuant to the judgment of strict fore-

closure, [*the elder Sullivans*] have lost none of the just rights they acquired in granting the mortgage to their son, due to the fact that they still have every right to recover the [$34,000 differential] by subrogating themselves to the rights of [the younger Sullivans] under the contract [the younger Sullivans] had with the Wirtzes to sell the house for $116,000."

Although the contract action was not before the court as part of the foreclosure proceedings, the record reveals that the contractual rights of the respective parties impacted the trial court's analysis of the equities. If the Wirtzes are obligated to pay the balance due on the contract price, as the trial court believed, the younger Sullivans are not barred from collecting the $34,000 difference between the contract price and the figure the Wirtzes had paid to redeem.

Although further litigation may be necessary to resolve this issue, neither the younger Sullivans nor the elder Sullivans have challenged this portion of the trial court's analysis of the situation on appeal. Absent even an argument that the trial court's reasoning was faulty and that the Sullivans could not recover the difference between the redemption figure and the contract price, I find it difficult to say that the trial court abused its discretion in ordering a strict foreclosure.[3]

In summary, the majority finds an abuse of the trial court's discretion solely on the basis of the windfall the Wirtzes will supposedly receive because of the excess monetary equity in the property. It completely fails,

---

[3] I do not "assume," as the majority indicates in its footnote 9, that the Wirtzes would remain liable to pay the difference between the contract price and the sum they paid to redeem the property. In view of the trial court's observation, however, I do not understand how, without that issue being resolved, the majority automatically balances the equities in favor of the younger Sullivans. As the moving party, the burden was on them to demonstrate that they would not receive the contract price. The contract cannot be ignored, in the absence of any showing that it was invalid, simply because it was in litigation.

however, to refer to the trial court's analysis of the possible distribution of the contract price or to give deference to the court's balancing of the other equities. "In reviewing this exercise of judicial discretion with such a heavy hand, the majority usurps the function of the trial court and fails to accord reasonable deference to its evaluation of the factors involved." *Picketts* v. *International Playtex, Inc.*, 215 Conn. 490, 517, 576 A.2d 518 (1990) (*Shea, J.*, dissenting). Indeed, I find it remarkable that the majority ignores the trial court's analysis and will allow the younger Sullivans, the breaching defendant in the contract action and the dilatory party here, to reap the benefit of any increase in the market value of the property.[4]

### III

The majority acknowledges that "[g]ood cause for opening a foreclosure pursuant to § 49-15 . . . cannot rest entirely upon a showing that the original foreclosure judgment was erroneous. Otherwise that statute would serve merely as a device for extending the time to appeal from the judgment." The majority then asserts that a mere allegation by the younger Sullivans that "they had 'not the means to redeem' " was sufficient to allow them to open the judgment. This is hardly a revelation that previously could not have been brought to the attention of the trial court had the younger Sullivans acted with a reasonable, indeed any, degree of diligence.

The younger Sullivans do not explain why it took them nearly two months from the date of the judgment to decide that they could not afford to redeem on their law day. Nor do the younger Sullivans explain why they were unable to make an appearance in court or to file a motion, prior to the expiration of the law days, to

---

[4] The trial court stated: "And the reality as far as the owners are concerned is that they agreed to sell their property for $116,000 before they realized it was worth $180,000, at least according to the appraisal—$170,000."

inform the court that they were having difficulty in securing financing to redeem. By allowing the younger Sullivans to open the judgment belatedly, without any explanation as to why they did not appear, the majority allows the younger Sullivans to utilize § 49-15 "as a device for extending the time to appeal from the judgment," a use to which it says § 49-15 should not be put.

I find it intolerable that the elder Sullivans, who were aware of the law days and inexplicably failed to have their motion heard prior thereto, are able to thwart the court's judgment and extend the time to file motions and the appeal period indefinitely, not only for themselves, but also for a party who had been defaulted for failure to appear. The delay in hearing the elder Sullivans' motion was not caused by "delays incident to the legal process of appeal," as the majority would have it, but rather by the indecisiveness and inattentiveness of the parties filing the motions.[5] The majority's sanctioning of such lackadaisical practices in foreclosure actions could wreak havoc upon the finality of judgments and the effectiveness of our system of real estate recording.

## IV

"[A] motion to open is not a substitute for an appeal. A motion to open filed beyond the expiration of the appeal period will not preserve for appeal issues pertaining to the earlier final judgment. *Governors Grove Condominium Associates, Inc.* v. *Hill Development Corporation,* 187 Conn. 509, 510 n.2, 446 A.2d 1082

---

[5] At the commencement of the hearing on the younger Sullivans' motion to open on June 2, 1988, the court asked the attorney for the elder Sullivans, "And I take it, Mr. Harris, that you have abandoned your motion to reopen?" The attorney responded that while the elder Sullivans had not abandoned the motion, it was not on for June 2, 1988, and he did not wish to have it heard. He stated, *"I don't know where we're going to be going with the case."* (Emphasis added.) It was only after the trial judge demanded that the elder Sullivans act upon their motion that they reluctantly acquiesced to a hearing on it.

(1982)." *Crozier* v. *Zaboori,* 14 Conn. App. 457, 462, 541 A.2d 531 (1988). The younger Sullivans could have properly extended their time to file an appeal from the judgment of strict foreclosure by filing a request for an extension of time pursuant to Practice Book § 4040, or by filing any of the motions designated in § 4009 *within the appeal period.* The younger Sullivans cannot, however, belatedly extend their own appeal period by attempting to piggyback another non-appealing party's timely motion. Because their motion to open was filed more than twenty days after the judgment was entered, they are precluded from appealing the foreclosure judgment itself. *Yanow* v. *Teal Industries, Inc.,* 196 Conn. 579, 582 n.3, 494 A.2d 573 (1985). While in the proper instance a motion to open a judgment may operate to extend the applicable appeal period, it will not "serve to revive rights which were lost before the motion was made." *Daland's Application,* 81 Conn. 249, 252, 70 A. 449 (1908).

Therefore, the trial court's denial of the younger Sullivans' motion to open the judgment is the only claim properly before this court on appeal. Because I would affirm the trial court's decision to deny the younger Sullivans' motion to open, there is no need to address the remaining claims. There is nothing, therefore, to prevent giving effect to the judgment of strict foreclosure and the law days set by the trial court. Pursuant to that judgment, title should have vested in the Wirtzes, the redeeming party. This court should not disturb the finality of that judgment to accommodate the indifference of the defendants.[6] *Steve Viglione Sheet Metal Co.* v. *Sakonchick,* supra, 713; see also General Statutes § 49-15.

---

[6] The judgment stated, "that upon payment of these sums, interest and costs by any defendant, after all subsequent parties in interest have been foreclosed, the title to the premises shall vest absolutely in the defendant making such payment, subject to such unpaid encumbrances, if any, as precede the interest of the redeeming defendant."