[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
CT Page 9039
Plaintiff, the owner of real property located on the northerly side of Church Street, Stonington, Connecticut, seeks to enforce a restrictive covenant which benefits her property and burdens the defendants' property which is also located on the northerly side of Church Street and which abuts the easterly boundary line of plaintiff's property. The restrictive covenant reads as follows:
 Any building which shall be built upon said lot shall be set back at least sixty (60) feet north from the southerly side of the stone wall bounding said property on Church Street and at least fifty (50) feet east from the westerly line of said lot; provided, however, that one one-story garage may be built on said lot not nearer than ten (10) feet to the westerly side of said lot.
The covenant was created in 1949 when plaintiff and her co-owners sold the lot (subject property) which defendants now own to defendants' predecessors in title. Subsequent thereto and prior to defendants' ownership of the subject property, a predecessor in title to the subject property caused a garage to be erected on the subject property at least fifty (50) feet of the westerly line of the subject property and not nearer than ten feet to said westerly line. There is no evidence that plaintiff ever objected to that construction.
When defendants acquired the property, the garage was on the subject property as it was previously constructed. The garage had twin dormers with a peak height in the front of 12 feet but which sloped to the rear to a height of 5 feet 11 inches. The garage was 22 feet 4 inches long and 20 feet 3 1/8 inches wide. It did not have an attic space or floor above the ground floor. Plaintiff's Exhibit P.
Defendants wanted to renovate the garage to provide storage space and to have the appearance of the garage conform to the design of their home. See Defendants' Exhibit 33A. On December 9, 1991, after obtaining the necessary permits and approval from the Town of Stonington (Plaintiff's Exhibit L), the defendants started renovating the garage. By December 21, 1991, the old roof and part of the old walls had been removed, CT Page 9040 new knee walls, roof trusses, rough framing, collar ties, ceiling joists and plywood covering them and plywood sheathing around the knee walls were in place.
On December 21, 1991, the defendants ceased work on the garage because of the complaints of Peter and Eileen Jachyms, abutting land owners of the defendants to the north. Although the Jachyms had no standing to enforce the restrictive covenant, the defendants ceased construction to determine if an alternate renovation plan could be used so as to satisfy the Jachyms' complaints. Thereafter, the defendants received a letter dated December 30, 1991, from Attorney Francis J. Pavetti, who represented the Jachyms, concerning their attitude about the proposed renovation to the garage. Plaintiff's Exhibit M-1.
Because the decision of the Town of Stonington approving the defendants' application to renovate the garage had not been published, the defendants again applied for a building permit to renovate the garage. Plaintiff's Exhibit O-1. On February 18, the defendants received such approval (Plaintiff's Exhibits O-3).
The defendants could not find any suitable alternative to their original plans. Therefore, on February 19, 1992, the defendants continued with the renovation to their garage and completed same in March 1992. The total cost of the renovations was between $15,000 and $20,000.
The defendants completed the renovations in the good faith belief, based on the advice of their Connecticut-licensed architect, Robert Mercer, their attorney, and Thomas Watkins, the Town of Stonington building official, that the renovated garage would be a one-story garage and would not be in violation of the restrictive covenant.
Plaintiff, claiming that the renovated garage violated the restrictive covenant, began this lawsuit by complaint dated September 18, 1992, approximately six months after the completed renovations. She claimed that, since she had no adequate remedy to abate and discontinue said violation and breach of the restrictive covenant, she will suffer irreparable harm. Therefore, plaintiff seeks permanent injunctive relief to the effect that: CT Page 9041
(1) The defendants remove the garage from the subject property, or, in the alternative, that the defendants alter, reconstruct and restore said building to its former state, height and size as existed prior to said addition therefor;
(2) The defendants be prohibited from using said garage until (1), supra, has been done and from doing any further work on said garage which would violate said restrictive covenant;
(3) damages;
(4) punitive damage;
(5) and such other relief as plaintiff may be entitled to in law and equity.
The defendants deny plaintiff's claims that the renovated garage is more than a one-story garage. By way of a special defense, defendants claim that the plaintiff is barred by laches from enforcing said covenant. Plaintiff denies defendants' special defense.
 I
The renovated garage covers the same land area as did the original garage. It has a length of 22 feet 4 inches and a width of 20 feet 3 1/3 inches. However, it now has a single roof with a peak height of 19 feet 10 inches from front to rear. A plywood floor has been installed on the floor joists in the attic area. Collar ties, approximately two feet on center running from the front to the back of the garage, are attached to the roof rafters located 6 feet 8 inches above the plywood floor.
The attic does not contain any water supply, plumbing or heating systems. The walls and roof in the attic area are open without insulation. Access to and from the attic is solely by way of an inside stairway from the garage floor to the attic area. The stairway is without stair rails and without a door at the top or bottom of the stairway.
The defendants have installed a work bench in the attic, but they have not themselves or have they permitted anyone to use the attic as an area for cooking, living, dining CT Page 9042 or sleeping. The area is used mostly for the storage of personal property and to allow defendants to utilize the work bench for puttering and repairing.
The architectural style of the garage now more closely matches the south side of the defendants' house. Defendants' Exhibits 12A through C and 33A.
 II
Expressed intent controls the determination of the meaning of words contained in a restrictive covenant. Katsoffv. Lucertini, 141 Conn. 74, 77 (1954). In determining expressed intent, certain principles of construction are followed. Id. One is that the intention of the parties is determined by reading the covenant's entire context, not by reading a single clause. Moore v. Serafin, 163 Conn. 1, 10 (1972). Another is that the words used are to be taken in their ordinary and popular sense, unless the words have acquired a special meaning in the particular relation in which they appear, or unless it appears from the context that the parties intended a different meaning. Katsoff v. Lucertini, 141 Conn. at 77.
If the language of a restrictive covenant is doubtful or of uncertain meaning, when read in the context of surrounding circumstances, it also will be construed against, rather than in favor of, the covenant. Katsoff v. Lucertini, 141 Conn. at 77. The meaning of the language of a restrictive covenant is to be narrowly construed, avoiding any extension by implication.Saphir v. Neustadt, 177 Conn. at 204.
The language of the restrictive covenant is clear and adequately expresses the purpose for the covenant except for what is meant by a one-story garage. There is no restriction as to the height of the garage except as may be indicated by the phrase one-story garage.
A logical source of the meaning of the phrase "one-story garage" is the Connecticut State Basic Building Code. The BOCA National Building Code, published by the Building Officials and Code Administrators International, Incorporated (BOCA) and the CABO One and Two Family Dwelling Code, published by the Council of American Building Officials (CABO), are part of the Connecticut Basic Building Code. Connecticut General Statutes § 29-252; Defendants' Exhibits 18-20. CT Page 9043
The defendants received approval of the building official of the Town of Stonington to renovate their garage as it now exists. Apparently, the building official of the Town of Stonington was satisfied the planned renovations to the defendants' garage satisfied all building codes pertaining to the Town of Stonington.
The restrictive covenant burdening defendants' land does not limit the height of a one-story garage. The fact that the garage had a height of 19 feet 10 inches would not, of itself, constitute a violation of said covenant and the aforesaid codes. In fact, the plaintiff's expert witness, James Griffith, a Connecticut-licensed architect, admitted that if the plywood floor was removed, the garage would be a one-story garage.
Ballentine's Law Dictionary, 3rd Ed., p. 1221, defines "story" as a habitable space between two floors of a building. See also Hunter v. Narragansett Electric Light Co., 146 A. 624,625 (R11929). BOCA defines habitable space to be "space in a structure for living, sleeping, eating or cooking . . ." Defendants' Exhibit 18, p. 30. Further, on page 22, BOCA defines habitable attic as "an attic which has a stairway as a means of access and egress and in which the ceiling area at a height 7 1/3 feet . . . above the attic floor is not more than one-third of the area of the next floor below." The distance from the plywood floor in the defendants' garage to the underside of the collar ties is six feet eight and one-half inches (6'8 1/2"). Therefore, since the attic space in the defendants' garage is not a space for living, sleeping, eating or cooking and the ceiling area is less than 7 feet 4 inches above the attic floor, the attic space is not habitable space and not a habitable attic.
CABO pertains to one and two-family dwellings. Defendants' Exhibit 16. However, it defines a habitable room as any room meeting the requirement of CABO for sleeping, living, cooking or dining purposes. Id., p. 6. CABO further requires that a habitable room shall have a ceiling height of not less than 7 feet 6 inches for at least 50 percent of its required area. Id., p. 12. The exception to this requirement provides that beams and girders not less than 4 feet on center may project not more than 6 inches below the required ceiling height. Id., p. 13. CT Page 9044
As stated, the attic in defendants' garage is not used for sleeping, living, cooking, ordinary purposes. Further, the distance from the bottom of the ceiling joists to the floor are 6 feet 8 1/2 inches. Clearly, under said codes, the attic area in defendants' garage is not habitable space and therefore not a story.
For reasons stated above, this court finds that the defendants' garage as renovated is still a one-story garage which does not violate the restrictive covenant.
The court now considers the other claims of law involved in this matter.
 II
Latches consists of an unexcusable delay which prejudices another party. Farmers Mechanics Savings Bank v.Sullivan, 216 Conn. 341, 350 (1990).
The plaintiff's driveway runs from Church Street to her house. It is located 25 feet from the west end of the defendants' garage. Defendants' Exhibit 39. Because of the proximity of plaintiff's home and her driveway to defendants' garage and the noise created by the renovation to the garage, plaintiff knew or should have known of the renovation work to the garage. Notwithstanding this knowledge, she did nothing to stop the defendants' renovation. The letter Attorney Pavetti sent to the defendants in January 1992, claiming that defendants were violating the restrictive covenant was not sent at her request but at the request of the Jachyms. Plaintiff's Exhibit M-2. However, on January 29, 1992, plaintiff refused to discuss the matter with the defendants after they received Pavetti's letter and referred them to her attorney. Plaintiff took no further action until she instituted this lawsuit some six months after the defendants completed the renovations to the garage.
Plaintiff claims that her delay in bringing this action was reasonable because she was waiting for a determination of the Jachyms' appeal from the decision of the zoning board of the Town of Stonington. She felt that if the Jachyms were successful in their appeal, the garage would have to be restored to its former condition. However, she instituted this action approximately three months before the decision, CT Page 9045 which was adverse to the Jachyms, was issued in December 1992.
The defendants have been unduly prejudiced by the plaintiff's unreasonable delay in asserting her claimed rights. To require the defendants to restore the garage to its former state would result in a waste of the money defendants expended to renovate the garage and would certainly result in a waste of money to restore it to its former condition.
Accordingly, the court finds the plaintiff guilty of laches in not asserting her claimed rights more assertively and promptly.
 III
Assuming that defendants' renovated garage did constitute a violation of the restrictive covenant, the plaintiff is not entitled to any relief and has not suffered any damages therefrom.
The granting of an injunction rests within the sound discretion of the court. Karls v. Alexandra Realty Corporation,179 Conn. 390, 401 (1980). The general rule that substantial and irreparable injury must threaten before an injunction will issue is subject to the exception that "a restrictive covenant may be enforced by an injunction without a showing that the violation of the covenant will cause harm to the plaintiff, so long as such relief is not inequitable". Hartford Electric LightCo. v. Levitz, 173 Conn. 15, 22 (1977). See also Gino's Pizzaof East Hartford, Inc. v. Kaplan, 193 Conn. 135, 139 (1984). Where a balance of the equities favor the defendant, the injunctive relief will be denied. Hartford Electric Light,
supra, p. 21.
When one has acted wrongfully in a wilful invasion of another's rights in real property, the wrongdoer may be required to correct the wrong even though the wrongdoer would suffer great loss. Id., p. 21. "Where, however, there has been an innocent mistake or a bona fide claim of right on the part of the defendant or laches on the part of the plaintiff, or where the conduct of the defendant was not wilful and inexcusable, and where the granting of the injunction would cause damage to the defendant greatly disproportionate to the injury of which plaintiff complains and it appears that damages will adequately compensate the latter . . . it would be inequitable to grant a CT Page 9046 mandatory injunction and the plaintiff has been remitted to his remedy by the way of damages." Id., pp. 21 and 22.
In the instant case, the defendants proceeded in good faith with the renovation to their garage upon the advice of their attorneys, their architect and the approval of their building permit by the building official of the Town of Stonington.
Prior to the renovation of the defendants' garage, plaintiff's view from her premises in an easterly direction was defendants' garage, a portion of the west side of defendants' residence and the Town of Stonington School, which extended above the defendants' residence. The only effect of the renovation is that plaintiff is now unable to see as much of the west side of defendants' home as before.
The plaintiff did not suffer any damage as a result of the renovated garage. The value of her property has not been affected by the renovations to the garage.
Although plaintiff had the financial resources to finance this litigation, she did not. In fact, the Jachyms have financed the total costs and expenses of this litigation without any agreement or expectation of reimbursement from the plaintiff.
In balancing the equities, the court concludes that, to order the defendants to restore their garage to its prior condition would be grossly inequitable.
For all the aforesaid reasons, judgment is entered for the defendants, together with costs.
Paul M. Vasington, State Trial Referee