[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON MOTION TO COMPEL MEDICAL EXAMINATION
In this case, plaintiff Paul D. Estefan has sued defendants John A. Rolls and Jason Rolls to recover money damages for certain injuries he claims to have suffered due to John Rolls' negligence in flying an airplane that crash landed at the Danbury (CT) Airport on August 4, 1997. In the plaintiff's two-count Revised Complaint dated November 1, 1999, he alleges, inter alia, that he suffered certain serious injuries to his leg while attempting to rescue John Rolls from the crashed airplane. These injuries allegedly prevent him from flying an aircraft thereby precluding him from obtaining any employment that requires him to fly. Id. Count I, Paragraphs 7 and 13, Count II, Paragraphs 8 and 14.
On September 13, 2000, after this case was transferred to this Court from the Judicial District of Danbury for case management, possible settlement and trial, the Court held an initial status conference with counsel to establish a schedule for completing discovery and preparing the case for trial. In the course of that conference, counsel for the defendants advised the Court that he wished to have an independent medical examination ("IME") of the plaintiff performed by a Danbury-based flight surgeon. The basis for this request is the plaintiff's claim that CT Page 429 the injuries he suffered in the course of rescuing defendant John Rolls will prevent him from keeping his certification as a pilot. Accordingly, this Court, without objection by the plaintiff, gave the defendants until October 15, 2000 to name their IME doctor, to November 15, 2000 for the doctor to perform the IME, and to November 29, 2000 to file the IME report. The Court further ordered that, if the defendants wished to disclose the IME doctor as an expert witness, they would be required to do so along with their other experts by January 16, 2001, 50 all defense experts could be deposed by March 15, 2001, and a trial date could be selected at the next status conference on March 19, 2001. The Court's announced plan was to start the trial in the late Spring of 2001.
On October 13, 2000, in compliance with Scheduling Order #1 dated September 13, 2000, the defendants duly filed and served their Request for Medical Examination. In their Request, as anticipated at the initial status conference, they named Dr. George J. Terranova, a Danbury physician approved by the Federal Aviation Administration (FAA) to conduct FAA examinations, to perform the IME. Though the request did not detail the time, manner, conditions or scope of the contemplated examination, as required by Practice Book § 13-11(b), it did request the plaintiff to bring to the examination "all pertinent medical records including, but not limited to, x-ray, MRI, and CT Scan films pertaining to the injuries claimed in this action[;]" Request for Medical Examination (Oct. 13, 2000), p. 1; and indicated that the examination would be performed at "Danbury Hospital, 24 Hospital Avenue, Danbury, CT at a date and time mutually agreeable to the plaintiff and Dr. Terranova." Id.
Under Practice Book § 13-11(b), any request that the plaintiff submit to a physical examination
 shall be complied with by the plaintiff unless, within ten days from the filing of the request, the plaintiff files in writing an objection thereto specifying to which portions of said request objection is made and the reasons for said objection. . . . No plaintiff shall be compelled to undergo a physical examination by any physician to whom he or she objects in writing.
In this case, however, the plaintiff made no objection in any form to any portion of the defendants' Request for Medical Examination, instead agreeing, in an exchange of letters between his lawyer and defense counsel, to submit to the requested IME on November 1, 2000. The lawyer's letter to defense counsel, dated October 19, 2000, was phrased as follows:
Dear Attorney Rojas: CT Page 430
 Pursuant to your letter dated October 18, 2000, I have spoke [sic] with my client Paul D. Estefan and his schedule is clear for an IME to be conducted with Dr. George J. Terranova for Wednesday, November 1, 2000.
 Please advise me as to whether or not this date is confirmed and, if so, the time of the IME in order that I might advise Mr. Estefan accordingly.
Very truly yours,
 /ss/ Robert C. Lubus, Jr.
Motion to Compel Medical Examination (Nov. 17, 2000), Exh. B. Defense counsel promptly responded to the plaintiff's lawyer in writing on October 23, 2000, indicating that the IME by Dr. Terranova would take place at the Emergency Department of Danbury Hospital at 9:00 a. m. on November 1, 2000.
When the plaintiff reported to the Emergency Department of Danbury Hospital for the scheduled IME on November 1, 2000, he was asked to complete documentation for an FAA examination. Instead, he insisted that Dr. Terranova's examination be limited to "his knee/leg injury only," as that was the only injury for which he claimed damages in this case. When Dr. Terranova declined to limit the scope of his examination, the plaintiff left the Hospital and called his lawyer, who promptly wrote to defense counsel as follows, to complain about the scope of the proposed IME:
Dear Attorney Rojas:
 I am writing with regard to the IME of Mr. Paul Estefan, which was conducted this morning at 9:00 a. m. at the Danbury Hospital Emergency Room by Dr. George Terranova.
 Mr. Estefan's IME was to consist of his knee/leg injury only as that is what we are claiming. However, Mr. Estefan was asked to complete documentation for an FAA examination which he did not do.
While we are in agreement regarding an IME being conducted, we did not agree on an FAA examination to take place and therefore, Mr. Estefan would not submit to the same. He did, however, allow the examination to take CT Page 431 place regarding the claims pending for his leg/knee injury.
 Should you have any questions, please do not hesitate to contact me.
Very truly yours,
 /ss/ Robert J. Lubus, Jr.
Motion to Compel Medical Examination (Nov. 17, 2000), Exh. D. At no place in this letter was it suggested that the plaintiff had any objection to being examined by Dr. Terranova, much less any personal reasons why the doctor could not appropriately serve as an independent medical examiner.
The following day, on November 2, 2000, the plaintiff's lawyer wrote once again to defense counsel concerning the proposed IME. There, after repeating his contention that the IME was to have been limited in scope to the plaintiff's knee/leg injury, "as that was the only injury we claim impairs Mr. Estefan's ability to renew his pilot's license," the lawyer wrote as follows:
 Please be advised that there is a personal relationship between Mr. Estefan and Dr. Terranova. Therefore, I request that you chose [sic] an alternate physician to conduct the IME of Mr. Estefan. If said IME physician is FAA certified, the examination results should advise as to whether or not Mr. Estefan is disabled from flying due to his knee/leg injury only and not as a result of any other circumstances.
Motion for Medical Examination (Nov. 17, 2000), Exh. F (Emphasis, in original).
Approximately two weeks later, on or about November 17, 2000, the defendants moved this Court to compel the plaintiff to submit to a full IME by Dr. Terranova, including all aspects of a standard FAA examination, to determine both the status of the knee/leg injury he claims to have suffered when rescuing defendant John Rolls and the appropriateness of medically certifying him to fly in light both of that injury and of his general physical condition. In support of their Motion for Medical Examination, the defendants submitted true copies of the above-referenced letters between counsel and two supporting memoranda of law. CT Page 432
The plaintiff has opposed the defendants' motion by filing a two-page written Objection dated December 7, 2000.
The defendants have requested that their Motion for Medical Examination be adjudicated pursuant to paragraph four of the General Case Management Order dated June 15, 2000.
 I
The State of Connecticut employs a rational procedure for balancing the privacy interests of civil plaintiffs against the legitimate needs of civil defendants to defend themselves knowledgeably and effectively against personal injury claims. Under that procedure, "any party adverse to the plaintiff" in an "action to recover damages for personal injuries" may file and serve a written "request that the plaintiff submit to a physical or mental examination" at the requesting party's expense, provided that the "request shall specify the time, place, manner, conditions and scope of the examination and the person or persons by whom it is to be made." Practice Book § 13-11(b). The rule further provides that "such request shall be complied with by the plaintiff unless, within ten days from the filing of the request, the plaintiff files in writing an objection thereto specifying to which portions of said request objection is made and the reasons for said objection." Id.
Upon the filing of any objection as aforesaid, "the objection shall be placed on the short calendar list [, . . . where t]he judicial authority may make such order as is just in connection with the request." Id. The rule concludes by providing that "[n]o plaintiff shall be compelled to undergo a physical examination by any physician to whom he or she objects in writing." Id.
The logic of this rule is very straightforward. First, it contemplates that the procedure for requesting and performing IMEs of personal injury plaintiffs can be managed entirely by counsel, without judicial intervention unless absolutely necessary. When presented with a narrowly tailored request for an IME — to be conducted at a particular time and place, in a particular manner, and by a particular doctor — the plaintiff can either accede to the request by not objecting to it, negotiate a modification of the proposed IME with the plaintiff or his counsel, or file a timely objection that points specifically to those particular portions of the request with which he takes issue. If, in the end, no objection is forthcoming, the request "shall be complied with by the plaintiff" notwithstanding any defects in it to which he could have objected. Such defects are waived by failure to assert them in the time and manner required by law.
If, however, the plaintiff does object to the request for examination, CT Page 433 the court must consider the objections presented and "make such order as it just in connection with the request." Because each objection must be specific, identifying both the portions of the request that are objected to and the reasons for each objection, the court's sole take in conducting its review must be to rule on the objections actually presented. Naturally, the failure to object on other grounds, or to support one's objections with other reasons, constitutes a waiver of such other grounds or reasons as bases upon which to avoid the requested examination.
Finally, though the final sentence of the rule appears to grant plaintiffs an absolute right not to "be compelled to undergo a physical examination by any physician to whom he or she objects in writing[,]" the language of that sentence must be read in context to be properly understood. More specifically, that sentence must be read in light of the provisions that precede it, which set a time frame for objecting and specify a particular manner — with specificity and in writing — in which the objection must be made. There can be no doubt that a plaintiff who fails to object to a particular IME physician in the manner specified in § 13-11 (b) waives his right not to be compelled to undergo a physical examination by that physician just as surely as if he made no objection at all. Whether or not he complies with the Court's order to undergo the examination in question, he can certainly be ordered to undergo it and have sanctions imposed upon him if he refuses to cooperate. Practice Book § 13-14; Jaconski v. AMF, Inc., 208 Conn. 230,232, 543 A.2d 728 (1988) ("[T]he trial court has the inherent power to provide for the imposition of reasonable sanctions to compel the observance of its rules."); Gionfrido v. Wharf Realty, Inc., 193 Conn. 28,33 474 A.2d 787 (1984); Stanley v. Hartford, 140 Conn. 643, 648,103 A.2d 147 (1954); Kiesling v. Kiesling, 134 Conn. 564, 568, 59 A.2d 532
(1948) ("Orders made pursuant to the rules on discovery are, speaking generally, within the sound discretion of the trial court.").
 II
In this case, by failing to object in timely fashion to the conduct of a full examination by Dr. George Terranova, the plaintiff waived his right to object to said IME, including an examination of his knee/leg injury and a complete FAA examination to determine his medical eligibility to fly an aircraft in light of that injury and his general physical conditions. If the plaintiff found fault with the lack of specificity in the defendants' Request for Medical Examination, he could and should have objected to it on that basis in writing within ten days from the filing of the request. The plaintiff had no right to enforce his narrow view of the scope of the requested examination upon the defendants without raising the matter directly, and if necessary, obtaining a ruling CT Page 434 from this Court.
Had the plaintiff raised his objection, moreover, claiming that the scope of the examination should be limited to the status of his knee/leg injury and the effect of that injury on his ability to fly, he would not have prevailed. Though to be sure, the particular injury he claims to have sustained is to his leg and knee, the defendant's explicit purpose for examining him has always been to determine if said injury proximately caused him to become medically unfit to fly. Such an inquiry, however, cannot appropriately be limited to the narrow question, whether or not the injury here complained of would prevent the plaintiff from flying. Instead, part and parcel of the causation inquiry must also be the question, whether or not in the absence of that injury he would otherwise be medically qualified to fly. If, for example, the plaintiff were legally blind or unable to sit up and keep his balance, the loss of use of a leg, however debilitating in other ways, would have no material impact on his ability to fly.
In sum, the examination requested by the defendants, including a full FAA examination, is essential to enable them to prepare their defense in the instant case. Because the plaintiff alleges that the defendant's negligence has permanently compromised his ability to fly and earn an income as a pilot, he must submit to a physical examination designed to shed light on those very claims.
As for the plaintiff's objection to being examined by Dr. Terranova, not only was any such objection waived by the defendant's failure. to assert it in a timely fashion, but the grounds upon which it is based are transparently specious. The plaintiff knew that Dr. Terranova would be performing the IME as of mid-October, when the Request for Medical Examination was served and his lawyer discussed arrangements for scheduling it with him. If he had a personal relationship with the doctor that might have cast doubt on the doctor's impartiality, then surely he would have raised the subject with his lawyer when the doctor's name was first disclosed. Instead, of course, he cooperated fully with setting up the examination and would obviously have submitted to it had its scope not exceeded his unjustifiably limited expectations. In fact, the plaintiff's fear of partiality was non-existent, because he personally attempted to hire Dr. Terranova to examine him after defense counsel had already contacted him. Not surprisingly, then, it was not until his lawyer's second letter to defense counsel after the aborted examination that the existence of any potentially disqualifying personal relationship between himself and Dr. Terranova was first mentioned. In short, the plaintiff's objection, even if not clearly waived, is utterly without merit. In justice, then, he must undergo the requested examination by Dr. Terranova or be sanctioned for his failure to do so. CT Page 435
 CONCLUSION
For all of the foregoing reasons, the Court hereby
ORDERS that on or before January 31, Z 2001, the plaintiff must submit to an independent medical examination by Dr. George J. Terranova, at a time and place to be arranged at the mutual convenience of Dr. Terranova and the plaintiff; and
FURTHER ORDERS that the scope of such independent medical examination shall include examination of the plaintiff's knee/leg injury and a full FAA examination to determine both if the plaintiff is medically fit to fly in light of that injury and his general physical condition and if in the absence of said injury, the plaintiff would otherwise be medically fit to fly; and
FURTHER ORDERS that any action on the defendants' request that the plaintiff be charged the cancellation cost of the previously scheduled examination, should Dr. Terranova charge the defendants for the same, be deferred until such time as Dr. Terranova submits an itemized bill for services rendered in this case.
IT IS SO ORDERED this 5th day of January, 2001.
MICHAEL R. SHELDON, J.