[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] SECOND RULING ON PLAINTIFFS' MOTION FOR SANCTIONS
The plaintiffs in the above-captioned action have moved for sanctions on the ground that the defendant City of Danbury's failure failed to produce all documents requested in the plaintiffs' document request caused the plaintiffs to obtain an expert's report that was not based on all the relevant data. The plaintiffs seek various sanctions, including imposition on the City of the cost of repeating the analysis with the additional data that the City belatedly produced.
In a ruling dated January 3, 2003, this court found that the defendant City of Danbury had inadvertently failed to produce all documents responsive to the plaintiffs' request for production of documents. Specifically, the court found that thirty-six boxes of records were not sent to the depository where other documents for examination and copying by plaintiffs' counsel. Having decided that issue, the court noted that the parties had not adequately addressed the issue of prejudice and sanctions in their post-hearing briefs and requested that they provide briefs on these issues and in rebuttal of their opponent's post-hearing brief by January 16, 2003.
Standard of Review
Practice Book § 13-14 provides that if a party has failed to respond to requests for production the judicial authority "may, on motion, make such order as the ends of justice require." The Connecticut Supreme Court has observed that in addition to the specific provisions of the Practice Book authorizing imposition of sanctions, "the trial court has the inherent power to provide for the imposition of reasonable sanctions to compel the observance of its rules." Millbrook OwnersAssociation, Inc. v. Hamilton Standard, 257 Conn. 1, 9 (2001); Gionfridov. Wharf Realty, Inc., 193 Conn. 28, 33 (1984).
Findings
CT Page 1275
In their sixth amended complaint, the plaintiffs allege, inter alia, that the City accepted debris from construction and demolition sites between January 1995 and the end of December 1996, and that during 1995 and 1996 the City allowed sewer sludge to be deposited at the landfill. They allege that the materials dumped at the landfill during 1995 and 1996 caused contamination by the escape of gas and particulates, that is, dust. The plaintiffs hired a firm, E.H. Pechan Associates, to perform a study concerning the gas and particulate emissions between 1980 and 1996.
The plaintiffs assert that they gave Stephen Roe, of E.H. Pechan Associates, who prepared a report for use in this case, all of the documents that they had obtained in discovery, and that Roe and his assistants, Paula Hemmer and Kirstin Thesing, used the documents produced to prepare a report on the escape of gas and the dispersal of dust from the landfill.
All of the documents produced by the City to the plaintiffs in the document production that preceded the discovery of the thirty-six boxes were Bates-stamped. The plaintiffs state that they provided Roe with all Bates-stamped materials. The plaintiffs note that at the depositions of Roe, Hemmer and Thesing counsel for the City questioned the witnesses' use of assumptions in making their calculations and that the witnesses agreed that actual information concerning the volume of materials dumped and the size of the trucks that actually did the dumping would have been preferable to using assumptions. The witnesses stated that they used the material that was made available to them by the plaintiffs.
At the hearing on the motion for sanctions, the City demonstrated that some of the Bates-stamped documents that were provided to plaintiffs' counsel before Mr. Roe began his work were daily summaries listing all the loads dumped at the landfill along with the weight of the materials deposited. These documents do not cover the entire period analyzed. The documents to which the City directs this court's attention set forth the weight of materials deposited during some of the years at issue (Exh. 215-224); however, they do not set forth the weight of the trucks used in each trip, an issue central to the plaintiffs claim that dust was repeatedly stirred up and released into the surrounding area. The plaintiffs claim that the frequent release of dust caused many of them to have asthma attacks. The trip tickets, large volumes of which are included in the late-disclosed boxes, set forth the weight of each truck in a record of each load of material deposited in the landfill.
At their depositions, Roe, Hemmer and Thesing agreed with defense counsel's suggestion that the quality of their study would be improved by CT Page 1276 use of actual information on the size of trucks, the very data that was missing from the documents previously supplied by the City.
The City has moved to exclude Stephen Roe's testimony on the ground, inter alia, that he failed to perform his analysis on the basis of such site-specific information as the size of the trucks used, and the density of the cover soil. Since the documents the City produced before its discovery of the thirty-six boxes did not contain this information, the plaintiffs are at risk of having their expert witness disqualified for failure to analyze information that the City possessed but did not disclose until after Roe completed his analysis. The City, moreover, argues that dust was limited because large trucks were used to reduce disturbance that would cause dust to be dispersed. (Memorandum in Support of Motion of Municipal Defendants to Exclude as Unreliable the Expert Testimony of James Dahlgren, Daniel Teitelbaum and Stephen Roe (10/15/02), page 9).
The court finds that the plaintiffs' analysis of dust pollution at the landfill could not be performed in accordance with sound analytical practices because the City had failed to produce the trip tickets that contain crucial information concerning both the number of truck trips and the weight of the trucks that brought materials to the site during the relevant time period. The plaintiffs have claimed in passing that some of the other contents of the thirty-six boxes, in particular, a log containing information about cover operations, would have been helpful to other experts, however, they have failed to provide sufficient information to illustrate prejudice with respect to these other materials.
The court finds that the only prejudice actually proved to have resulted from the City's inadvertent failure to produce all documents responsive to the plaintiffs' request for production was prejudice to the analysis of dust dispersal by Steven Roe and his assistants.
Sanctions
As has been noted above, the rules of practice provide that upon finding that noncompliance with a discovery obligation has caused prejudice to the party that issued the discovery, the court must "make such order as the ends of justice require." The plaintiffs seek harsh and excessive remedies, notably, requiring the City to pay the plaintiffs' experts to inspect the thirty-six boxes of documents and to perform a new analysis. In fact, the harm done by the nondisclosure is that Roe and his assistants performed an analysis that did not include all the information that was in fact available in the City's records. The just approach is to CT Page 1277 shift to the City the cost of this faulty analysis. If the plaintiffs had been provided with all the documents initially, they would have borne the cost of inspection and analysis and the preparation of a report. The prejudice suffered by the plaintiffs is not the work that is to be done, but some of the work that was done on a flawed data base. If all of the documents had been produced at once, the expert witnesses would have had to inspect both the materials initially produced and the materials belatedly produced. There is therefore no basis for requiring the City to pay for such inspection. Roe would not, however, have performed two analyses of data if all the documents had been produced at one time, and the cost of the analysis and report that he issued is at least in part an expense that the plaintiffs would not have incurred. It may be that some of Roe's work can be used in performing an analysis and report that use all the date now available.
The City shall reimburse the plaintiffs for the costs of data analysis and preparation of the October 31, 2001 Roe report that are not also part of a new analysis of the totality of the data. Plaintiffs' counsel shall submit to the City's counsel a breakdown of the experts' fees that meet this description.
If the plaintiffs obtain a new analysis that includes the late-disclosed data, it is likely that the City will seek to depose Roe and his assistants again concerning the new analysis and conclusions. A second deposition would not have been necessary but for the late disclosure of documents and the need to repeat the dust analysis. If the City takes the deposition of Roe, Hemmer and/or Thesing for a second time, the City shall pay plaintiffs all costs associated with the prior depositions of each witness whose deposition is repeated, including the witnesses' fees for preparing and attending and plaintiffs' counsel's fee for preparing the witnesses and attending those depositions in 2002. If Roe prepares a new analysis, deposition testimony concerning the first analysis shall not be admitted at trial.
In the event of a dispute concerning the amounts the City must pay to the plaintiffs, plaintiffs shall submit an itemized claim for adjudication by the court, supported by sufficient documentation to enable the court to determine which expenses are due.
Case Management Schedule
The trial of this case had been scheduled to begin on April 2, 2003. Because of the late disclosure of documents, the plaintiffs are entitled to re-analyze the data concerning dust pollution. That task cannot be completed in the time remaining. The court therefore revises the case CT Page 1278 management order as follows:
1. The plaintiffs shall file a disclosure of Stephen Roe or any other expert witness who analyzes the documents provided by the City concerning the claim of dust pollution in compliance with Practice Book § 13-4(4) by July 14, 2003, and shall make any disclosed witness available for deposition within four weeks of disclosure.
2. The defendants shall file a disclosure of any expert witness to counter the announced testimony of any witness disclosed pursuant to paragraph 1 above by September 1, 2003, and shall make such witness(es) available for deposition within four weeks of disclosure.
3. The City has filed both a motion for summary judgment and a Porter motion which in part concern the plaintiffs proof of dust contamination. The merits of both motions may be affected by the re-analysis of the data. If the City seeks to revise it motion for summary judgment and Porter motion, such revised motions shall not be claimed for adjudication until November 3, 2003. If the City instead files new motions, the new motions shall not be claimed for adjudication until November 3, 2003. Any motion for summary judgment or Porter motion will be deemed abandoned if no request for adjudication is filed by December 1, 2003.
4. The trial of the claims of the plaintiffs who have been designated as the "vanguard plaintiffs" is postponed to June 3, 2004, the next available practicable date on this court's docket.
So ordered.
____________________ Beverly J. Hodgson Date Judge of the Superior Court CT Page 1279