## IN RE FRANK MONGILLO, JR.
### (10783)

SPEZIALE, C. J., PETERS, DALY, CIOFFI and F. HENNESSY, Js.

Argued April 5—decision released July 19, 1983

*John R. Williams,* with whom was *Frank Mongillo, Jr.,* for the appellant (Frank Mongillo, Jr.).

*Roger J. Frechette,* for the appellee (state).

SPEZIALE, C. J. The issue presented by this appeal is whether the trial court abused its discretion when it fined an attorney who failed to comply with an order of the court of which the attorney did not have either actual or constructive notice.

The record reveals the following facts: The Honorable Frank J. Kinney, Jr., began an assignment as presiding

judge for the judicial district of New Haven at geographical area No. 6 on June 30, 1980. During the first week of that assignment the court had difficulty obtaining the punctual attendance of counsel for the call of the calendar at 10 a.m. The court therefore advised those counsel who appeared before it during that week that, following the forthcoming Independence Day recess, if attorneys were going to be late for the call of the calendar they would be required personally to telephone the court. Those who were late and had not telephoned would be fined in accordance with General Statutes § 51-84.[1]

On July 8, 1980, the court called the calendar of jury cases at 10:13 a.m. Among the cases called were *State* v. *James Pesapane* and *State* v. *Angelo Pesapane,* for which the appellant, Frank J. Mongillo, Jr., was defense counsel. Neither Mongillo nor the defendants were present, but Frank Pesapane, a brother of the defendants, did inform the court that all three would be there shortly. The court ordered the rearrest of the defendants and resumed the calendar call.

At 10:20 a.m. the appellant arrived at court with his clients. The *Pesapane* cases were recalled, the rearrest orders were vacated, and the cases were placed on the "day-to-day" ready list.

The following dialogue then took place:

"The Court: . . . Let me address myself to you, Mr. Mongillo, briefly. As I indicated to you in chambers,

---

[1] At the time of the hearing in this case, General Statutes (Rev. to 1979) § 51-84 stated: "[General Statutes] Sec. 51-84. ATTORNEYS SUBJECT TO RULES. Attorneys admitted by the superior court shall be attorneys of all courts and shall be subject to the rules and orders of the courts before which they act, which may fine them for transgressing such rules and orders, not exceeding one hundred dollars for any offense, and may suspend or displace them for just cause."

In 1982 the section was revised in format without substantive change. See Public Acts 1982, No. 82-248, § 72.

you were not present in court at the time of the pretrial or firm jury lists were called, and you had cases on the list; and the notation that the Court made from the list, when the lists were called, was that you were not present; the lists were called at 10:13, and you were not present, though I had been told by somebody else that you would be late. It's the Court's intention to impose a fine of $25.00 under 51-84 of the Statutes. Do you wish to be heard?

"Mr. Mongillo: I wish to be heard on this. Your Honor, my clients were in my office prior to 10:00 this morning. I have never disregarded or had any disrespect for this Court, or any Court in the State. . . . I had personal problems this morning, which your Honor is well aware of, that necessitated my being late. I was here 20 minutes after 10. Mr. Pesapane came up, and I think the record will show; that he indicated that I would be late; that I would be here momentarily. I was here at 20 minutes after 10. At no time did I delay the court or hinder the court in their conducting of their business, and I disagree with the imposition of this fine; and that I would like a hearing on the matter.

"The Court: Well, this Statute doesn't call for any kind of a hearing. I certainly am willing to give you an opportunity to be heard, as I have, but I think you should appreciate some of the Court's problems, Mr. Mongillo. When I came in here last week, I was having a great deal of difficulty obtaining the attendance of counsel. The attendance of counsel is required unless excused by the Court; unless they notify the Court that they would be late. I am here from 9:00 to 10:00——

"Mr. Mongillo: Your Honor——

"The Court: Let me speak, I will let you be heard again; but I am here from 9:00 to 10:00, and counsel

should feel free to call me if they have a problem, as many counsel do. When I call the list at 10:00 or a few minutes after 10:00 and I don't have either clients here, on the first jury list, or I don't have lawyers here that are supposed to be here, I have to take some action to enforce attendance. Last week, I advised counsel, who were in attendance on several days, that although the Court was going to take no action last week, with regard to lateness of counsel appearing in court, that commencing this week, I would take appropriate action. I feel appropriate action to enforce the Court's requirement that you be in attendance here, which you are notified of when you are given the attendance slip, requires your attendance at 10:00. The Practice Book requires your attendance at the call of the dockets. I feel it's a reasonable proposition for ·the Court to take appropriate action to enforce attendance, and I think a nominal fine, under 51-84, which is not a finding of contempt, gives appropriate action for the Court to take. I appreciate your explanation; you may have thought it was worthwhile; I may have thought it was worthwhile. If you only called me before 10:00 and explained your problems . . . ."

The appellant further stated to the court that he had not had cases in this court the previous week and, therefore, he had no notice that the court had issued a new attendance order. He also stated for the record that he had been late because his father had suffered a stroke a few days earlier and that, when the nursing help had not arrived that morning, he had gone to help his father get out of bed.

The court repeated that all would have been well if only the appellant had telephoned. It then confirmed the imposition of a twenty-five dollar fine and ordered payment that day. From that judgment, the appellant

appealed to the Appellate Session of the Superior Court, which transferred the appeal to this court.

"The inherent power of the judiciary to control admission to the bar, to discipline its members and to prescribe rules for their conduct as officers of the court is not open to doubt. *Spring* v. *Constantino,* 168 Conn. 563, 575 n.7, 362 A.2d 871 [1975]; *Lublin* v. *Brown,* 168 Conn. 212, 228, 362 A.2d 769 [1975]; *Heiberger* v. *Clark,* 148 Conn. 177, 169 A.2d 652 [1961]." *Commission on Special Revenue* v. *Freedom of Information Commission,* 174 Conn. 308, 317–18, 387 A.2d 533 (1978). It is equally clear that the court has the inherent power "to provide for the imposition of reasonable sanctions to compel the observance of its rules." *Stanley* v. *Hartford,* 140 Conn. 643, 648, 103 A.2d 147 (1954); see *Heslin* v. *Connecticut Law Clinic of Trantolo & Trantolo,* 190 Conn. 510, 523, 461 A.2d 938 (1983). The judges of the Superior Court exercised their power over both attorneys and rule-making when they adopted Practice Book § 983, which provides: "Counsel who fails to appear on a scheduled date for any hearing or trial or who requests a continuance without cause or in any other way delays a case unnecessarily will be subject to Gen. Stat., § 51-84."

It is undisputed that a rule of the Superior Court required the appellant's attendance at the call of the calendar at 10 a.m. It is also undisputed that he was late. It is therefore not open to question that the Superior Court had the authority to impose a fine against the appellant for his tardiness.

Overcrowded dockets have become a major problem challenging the ability of the courts of this state and elsewhere to dispense justice. It is well known that justice delayed is justice denied. In order to fulfill our responsibility of dispensing justice we in the judiciary

must adopt an effective system of caseflow management. Caseflow management is based upon the premise that it is the responsibility of the court to establish standards for the processing of cases and also, when necessary, to enforce compliance with such standards. Our judicial system cannot be controlled by the litigants and cases cannot be allowed to drift aimlessly through the system. To reduce delay while still maintaining high quality justice, it is essential that we have judicial involvement in managing cases.

Caseflow management places new demands on our already overworked judges because the judge must actively establish and enforce the pace of litigation coming before the court, rather than allowing the parties to do so. Judges must be firm and create the expectation that a case will go forward on the specific day that it is assigned. In order to dispose of our cases in a fair, timely, and efficient manner, everyone involved must be present on time, prepared, and ready to go forward. Because both courtrooms and judges are necessarily limited in number, burgeoning caseloads require that efficient use be made of the available space and judicial time. Careful calendar control is one proven method of increasing the number of case dispositions in the system.

"A high degree of cooperation between bench and bar must be secured if calendar control and prompt disposition of . . . cases are to be effected.

"That high degree of cooperation has, in general, been attained. The great majority of members of the bar join with the judges in vigorous and sincere efforts to bring the congested dockets up to date. But a few attorneys are habitually dilatory. The often unconscious mental attitude of this small group contributes substantially to calendar congestion. . . .

"For many centuries it has been the practice to impose the shortcomings of the counsel upon the client. When a required pleading, for example, has not been filed in time or default has been incurred by reason of the failure of counsel to perform his duty, it has been usual to impose costs or some other penalty upon the party and not on his counsel. This seems as unrealistic as imposing a penalty on a passenger because the railroad train on which he rides is late because of the dereliction of the operating crew." *Gamble* v. *Pope & Talbot, Inc.,* 307 F.2d 729, 734 (Biggs, C. J., dissenting), cert. denied sub nom. *United States District Court* v. *Mahoney,* 371 U.S. 888, 83 S. Ct. 187, 9 L. Ed. 2d 123 (1962).

Practice Book § 983 provides specific authority to impose sanctions on dilatory attorneys in criminal cases, where sanctions against the parties are especially inappropriate.[2] General Statutes § 51-84, by its broader language, encompassing all judicial proceedings, recognizes the inherent power of the courts to impose sanctions against attorneys rather than against their clients in civil matters as well.

The trial court's order in the present case that attorneys would be excused from punctual attendance at calendar only if they personally telephoned the court beforehand was entirely reasonable. When Judge Kinney took over as presiding judge he found an unacceptable rate of absenteeism at the call of the calendar, and he instituted a fair and restrained procedure

---

[2] For example, the ultimate sanction of entering a judgment against the state is clearly against the public interest except in those cases where the actions of counsel for the state have substantially prejudiced the defendant's rights. See *State* v. *Ubaldi,* 190 Conn. 559, 575, 462 A.2d 1001 (1983); *State* v. *Files,* 183 Conn. 586, 441 A.2d 27 (1981). The equivalent sanction of entering judgment for the state in a criminal trial is, of course, constitutionally forbidden. *Arthur* v. *Superior Court,* 62 Cal. 2d 404, 411, 398 P.2d 777 (1965).

for encouraging improved attendance, which was necessary to the efficient assignment of cases and maximum use of available judicial resources.[3]

This order, no matter how reasonable, however, should not have been enforced against one who had neither actual nor constructive notice of it. The appellant knew that his attendance was required at calendar call at 10 a.m. unless excused by the court. The record reflects that the appellant informed the court that he would be late by sending Frank Pesapane to the courtroom with a message to that effect. The appellant had neither actual nor constructive[4] notice, however, that because of the court's order announced in court the previous week his attendance could be excused or postponed only by a personal telephone call to the judge, not by sending a messenger to the court. Although the court's efforts to improve caseflow are commendable and to be encouraged, under the circumstances of this case we are constrained to hold that it was an abuse of discretion to fine the appellant for transgressing a court order of which he had neither actual nor constructive notice.[5]

---

[3] Several scholars have suggested "that both speed *and* backlog are determined in large part by established expectations, practices, and informal rules of behavior of judges and attorneys." Church, Carlson, Lee & Tan, Justice Delayed: The Pace of Litigation in Urban Trial Courts (1978) p. 54; Church, "Who Sets the Pace in Urban Trial Courts?" 65 Judicature 76, 82 (1981). Attempts to change those expectations, as was done by the court here, are necessary for effective caseflow management.

[4] The record reflects that notice of the order was given only to those attorneys who appeared before the court on the week of June 30, 1980. It was not published in any legal journal or court document, nor were attorneys with cases pending on the calendar individually informed of it.

[5] As the trial court recognized, the appellant was late because of an unforeseeable emergency and not because of either negligence or willful disobedience. While a good excuse will not always be enough to avoid sanctions by the court, the reasons for an attorney's lateness should always be relevant to the exercise of a court's broad discretion in disciplinary matters.

There is error, the judgment is set aside, and the case is remanded with direction to expunge all records of the sanction against the appellant.

In this opinion the other judges concurred.