FRANCIS GIONFRIDO *v.* WHARF REALTY, INC., ET AL.
(11200)

SPEZIALE, C. J., PETERS, HEALEY, PARSKEY and SHEA, Js.

Argued January 3—decision released April 24, 1984

*Edward J. Daly, Jr.,* with whom, on the brief, was *Joseph E. Fazzano,* for the appellant (plaintiff).

*Michael Feldman,* with whom, on the brief, was *Michael F. Dowley,* for the appellee (named defendant).

SPEZIALE, C. J. This is an appeal by the plaintiff from the trial court's dismissal of his case for failure to "appear to prosecute his cause." We find no error.

The plaintiff sued the named defendant (hereinafter the defendant) for alleged tortious conduct by three of its employees[1] in removing the plaintiff from a bar. On December 22, 1980, the plaintiff was nonsuited by the trial court, *Edelberg, J.,* for failure to comply with discovery.[2] The plaintiff's motion to open the judgment of dismissal[3] was denied by the trial court, *Higgins, J.,*

[1] The plaintiff's complaint also named as defendants three employees of the named defendant whose actual identities the plaintiff did not know. On November 13, 1981, the trial court, *Higgins, J.,* rendered a default judgment "against John Doe, Richard Roe, and Paul Poe for failure to appear and defend the action."

[2] Practice Book § 231 provides in relevant part: "If any party has failed to answer interrogatories or to answer them fairly, or has intentionally answered them falsely or in a manner calculated to mislead, or has failed to respond to requests for production or for disclosure of the existence and contents of an insurance policy or the limits thereof, or has failed to submit to a physical or mental examination, or has failed to comply with a discovery order made pursuant to Sec. 230A, or has failed to comply with the provisions of Sec. 232, or has failed to appear and testify at a deposition duly noticed pursuant to this chapter, or has failed otherwise substantially to comply with any other discovery order made pursuant to Secs. 222, 226, and 229, the court may, on motion, make such order as the ends of justice require.

"Such orders may include the following:

"(a) The entry of a nonsuit or default against the party failing to comply . . . ."

[3] Practice Book § 377 provides: "Any judgment rendered or decree passed upon a default or nonsuit may be set aside within four months succeeding the date on which it was rendered or passed, and the case reinstated on the docket on such terms in respect to costs as the court deems reasonable, upon the written motion of any party or person prejudiced thereby, showing reasonable cause, or that a good cause of action or defense in whole or in part existed at the time of the rendition of such judgment or the passage of such decree, and that the plaintiff or the defendant was prevented by mistake, accident or other reasonable cause from prosecuting or appearing to make the same. Such written motion shall be verified by the oath

on February 10, 1981. Subsequently, the plaintiff again moved to open the judgment of nonsuit, which motion was granted by the trial court, *Purtill, J.,* on April 20, 1981.[4]

As early as October, 1981, the parties were aware that the case was marked ready and was on the trial court assignment list. On the afternoon of November

of the complainant or his attorney, shall state in general terms the nature of the claim or defense and shall particularly set forth the reason why the plaintiff or the defendant failed to appear. The court shall order reasonable notice of the pendency of such written motion to be given to the adverse party, and may enjoin him against enforcing such judgment or decree until the decision upon such written motion.

"If the court opens a nonsuit entered pursuant to Sec. 363, the court as part of its order may extend the time for filing pleadings or disclosure."

[4] The defendant moved to dismiss this appeal on the ground that the trial court lacked jurisdiction to open the judgment of nonsuit and that consequently this court lacked jurisdiction over any matter subsequent to the opening of the nonsuit. We denied that motion but the defendant again raises the issue in its brief. Although this issue should have been raised by a counter statement of issues pursuant to Practice Book § 3012 (a), we address the merits of the defendant's claim because it purportedly concerns our jurisdiction.

The defendant contends that the trial court, *Purtill, J.,* was without authority to open the nonsuit because the trial court, *Higgins, J.,* had already denied the plaintiff's earlier motion to open; thus, the defendant argues, all the proceedings subsequent to Judge Purtill's order are without effect. We disagree.

The nonsuit of December 22, 1980, was entered against the plaintiff for failure to respond to interrogatories pursuant to Practice Book § 231. Practice Book § 377 provides that a judgment of nonsuit may be set aside within four months of the date nonsuit entered. Thus, the trial court retains jurisdiction over the matter during the ensuing four months. The plaintiff's motion to open filed January 27, 1981, was based upon the plaintiff's compliance with discovery. The plaintiff's motion to open filed April 6, 1981, however, was based upon the plaintiff's understanding that the case was to go off the court calendar of December 22, 1980. Thus, in granting the motion to open, the trial court, *Purtill, J.,* was not overruling the previous denial of the motion to open by the trial court, *Higgins, J.,* but was acting upon information not presented to the trial court, *Higgins, J.* "Where a matter has previously been ruled upon interlocutorily, the court in a subsequent proceeding in the case may treat that decision as the law of the case, if it is of the opinion that the issue was correctly decided, in the absence of some new or overriding circumstance. *State* v. *Hoffler,* 174 Conn. 452,

12, 1981, Thomas Lombardo, the plaintiff's attorney, was contacted by a clerk of the court and informed that the case would start the following day. On the morning of November 13, 1981, Lombardo spoke on the telephone with Judge Higgins and was informed by Judge Higgins that the case must begin later that morning or be dismissed. Lombardo and Kevin Dubay, another attorney with the firm representing the plaintiff, then drove to Middletown and were informed by Judge Higgins that the jury would be picked that day (November 13, 1981) and that the case would be going forward on Monday, November 16, 1981. The trial court, *Higgins, J.*, noted that the plaintiff "previously received notice that you were in the top group of three or four cases assigned for trial." The jury panel was then sworn in and individual voir dire commenced. The trial court recessed for lunch at 1 p.m. and ordered the parties to return at 2 p.m. to continue with the jury selection.

At 2 p.m., neither the plaintiff nor his attorney was present although the defendant was ready to proceed. After a fruitless search by the sheriff for the plaintiff or his attorney, at 2:20 p.m. the trial court, *Higgins, J.*, dismissed the case for failure of the plaintiff to "appear to prosecute his cause." The plaintiff's counsel, Dubay, arrived at the courthouse at 2:26 p.m. Dubay stated that he had returned to his law office in Hartford during the recess and that he had lost track of time while attempting to "redate subpoenas, contact witnesses and insure the availability of expert med-

462–63, 389 A.2d 1257 (1978); *State* v. *Mariano,* 152 Conn. 85, 91–92, 203 A.2d 305 (1964), cert. denied, 380 U.S. 943, 85 S. Ct. 1025, 13 L. Ed. 2d 962 (1965)." *Breen* v. *Phelps,* 186 Conn. 86, 99, 439 A.2d 1066 (1982).

We note that even had the trial court, *Purtill, J.,* been without jurisdiction to decide the second motion to open, that would not deprive *this* court of appellate jurisdiction over an appeal by an aggrieved party from a final judgment. See General Statutes § 52-263.

ical witnesses." Further, Dubay stated that traffic conditions contributed to his delay in returning to the Middletown courthouse.

The plaintiff's motion to open the judgment of dismissal for failure to prosecute was denied on December 11, 1981, by the trial court, *Higgins, J.* The plaintiff appealed from the judgment of dismissal.

The plaintiff contends that the trial court abused its discretion in dismissing the case on November 13, 1981. The plaintiff's attorney was required by order of the trial court to appear when the court reconvened at 2 p.m. to continue with jury selection. He failed to do so. Practice Book § 251 authorizes the trial court to dismiss an action "[i]f a party shall fail to prosecute an action with reasonable diligence."[5]

The trial court, *Higgins, J.,* was confronted by a history of delay in this case. We have noted the responsibility of the trial court to process cases in a timely and efficient manner: "Overcrowded dockets have become a major problem challenging the ability of the courts of this state and elsewhere to dispense justice. It is well known that justice delayed is justice denied. In order to fulfill our responsibility of dispensing justice we in the judiciary must adopt an effective system of caseflow management. Caseflow management is based upon the premise that it is the responsibility of the court to establish standards for the processing of cases and also, when necessary, to enforce compliance with such standards. Our judicial system cannot be controlled by the litigants and cases cannot be allowed to drift aimlessly through

---

[5] Practice Book § 251 provides: "If a party shall fail to prosecute an action with reasonable diligence, the court may, after hearing, on motion by any party to the action pursuant to Sec. 196, or on its own motion, render a judgment dismissing the action with costs. At least two weeks' notice shall be required except in cases appearing on an assignment list for final adjudication. Judgment files shall not be drawn except where an appeal is taken or where any party so requests."

the system. To reduce delay while still maintaining high quality justice, it is essential that we have judicial involvement in managing cases.

"Caseflow management places new demands on our already overworked judges because the judge must actively establish and enforce the pace of litigation coming before the court, rather than allowing the parties to do so. Judges must be firm and create the expectation that a case will go forward on the specific day that it is assigned. In order to dispose of our cases in a fair, timely, and efficient manner, everyone involved must be present on time, prepared, and ready to go forward. Because both courtrooms and judges are necessarily limited in number, burgeoning caseloads require that efficient use be made of the available space and judicial time. Careful calendar control is one proven method of increasing the number of case dispositions in the system." *In re Mongillo,* 190 Conn. 686, 690–91, 461 A.2d 1387 (1983). In this case, the failure of the plaintiff's counsel to appear on time not only tied up valuable courtroom space, but it also inconvenienced the trial judge, opposing counsel, and the entire panel of jurors awaiting voir dire, all of whom were present at 2 p.m.

"We are not insensitive to the apparent harshness of any decision by a court that may be perceived as punishing the client for the transgressions of his or her attorney. Although our adversarial system requires that the client be responsible for acts of the attorney-agent whom the client has freely chosen; *Link* v. *Wabash R. Co.,* 370 U.S. 626, 633–34, 634 n.10, 82 S. Ct. 1386, 8 L. Ed. 2d 734, reh. denied, 371 U.S. 873, 83 S. Ct. 115, 9 L. Ed. 2d 112 (1962); the court is not without the power to take action directly against the errant attorney. It is an inherent power of the court to discipline members of the bar, and ' "to provide for the imposition of reasonable sanctions to compel the observance of its rules." *Stanley* v. *Hartford,* 140 Conn.

643, 648, 103 A.2d 147 (1954).' *In re Mongillo,* [supra].
Appropriate sanctions include, but are not limited to,
fining the attorney in accordance with General Stat-
utes § 51-84; *In re Mongillo,* supra, 686; or 'assess[ing]
costs against an attorney who fails to appear at a sched-
uled trial [or other hearing] without having obtained
a timely continuance.' *Beit* v. *Probate and Family
Court,* 385 Mass. 854, 855, 434 N.E.2d 642 (1982)."
*Thode* v. *Thode,* 190 Conn. 694, 698–99, 462 A.2d 4
(1983). Here, the trial court chose the most powerful
sanction of dismissal rather than a more moderate sanc-
tion directed to the attorney himself.

We recognize that dismissal is a harsh sanction.[6]
Under the circumstances of this case, however, we
would do a disservice to the great majority of attor-
neys, who are conscientious, and to the litigants of this
state if we unduly interfered with the trial court's judi-
cious attempts at caseflow management. We conclude
that the trial court did not abuse its sound discretion
in dismissing the plaintiff's action for failure to
prosecute.

There is no error.

In this opinion the other judges concurred.

---

[6] We note that the plaintiff is not without remedy and, inter alia, may
commence a new action pursuant to General Statutes § 52-592 which pro-
vides in relevant part: "If any action, commenced within the time limited
by law, has failed one or more times to be tried on its merits because
of . . . any matter of form . . . the plaintiff . . . may commence a new
action . . . for the same cause at any time within one year after the deter-
mination of the original action or after the reversal of the judgment." See
*McMahon* v. *Colaci,* 36 Conn. Sup. 269, 418 A.2d 98 (1980) (dismissal for
failure to prosecute is failure of a "matter of form").