******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

JOSEPHINE SMALLS MILLER *v.* APPELLATE COURT
(SC 19436)

Rogers, C. J., and Palmer, Zarella, Eveleigh, McDonald,
Espinosa and Robinson, Js.

*Argued November 13, 2015—officially released April 5, 2016*

*Josephine Smalls Miller*, self-represented, the plaintiff in error.

*Alayna M. Stone*, assistant attorney general, with whom were *Jane R. Rosenberg*, assistant attorney general, and, on the brief, *George Jepsen*, attorney general, for the defendant in error.

*Opinion*

PALMER, J. This case is before us on a writ of error brought by the plaintiff in error, Josephine Smalls Miller, who claims that the Appellate Court abused its discretion in suspending her from the practice of law before that court for a period of six months, in addition to imposing other sanctions, due to her failure to comply with Appellate Court rules and deadlines, and for filing a frivolous appeal. We disagree and, accordingly, dismiss the writ of error.

The record reveals the following facts and procedural history. Miller is an attorney licensed to practice law in the state of Connecticut. On November 3, 2014, the Appellate Court issued an order directing her to appear before an en banc panel of that court and to show cause "why she should not be sanctioned . . . for her failure [as appellate counsel] to meet deadlines and to comply with the rules of appellate procedure in [*Addo* v. *Rattray*, Docket No.] AC 36837, [in which] she . . . failed to timely file the appellant's brief and appendix in compliance with the appellate rules; for her failure [as appellate counsel] to meet deadlines and to comply with the rules of appellate procedure and [court] orders . . . in *Willis* v. *Community Health Services*, [Docket No.] AC 36955, and *Cimmino* v. *Marcoccia*, [Docket No.] AC 35944, and for her presentation of a frivolous appeal . . . [on behalf of the plaintiff] in *Coble* v. [*Board of Education*, Docket No.] AC 36677." The order further stated that "[t]he sanctions being considered by the Appellate Court include a prohibition against appearing in the Appellate Court or filing any papers in the Appellate Court for a period of time, the imposition of a fine pursuant to General Statutes § 51-84,[1] and costs and payment of expenses, including attorney's fees, to the opposing part[ies]." (Footnote added.) The Appellate Court also ordered opposing counsel in three of the aforementioned cases to appear at the hearing and to present argument on the following then pending motions: (1) the defendant's motion for attorney's fees in *Coble*; (2) the plaintiff's motion to open the dismissal of the appeal in *Willis*; and (3) the plaintiff's motion to set aside rule nisi No. 142267 in *Cimmino*.

On December 3, 2014, the Appellate Court conducted a hearing at which Miller presented oral argument as to why she believed sanctions in the aforementioned matters were unwarranted. Miller also submitted a written memorandum of law in support of her position.

With respect to the claim that she had failed to properly file the appellant's brief and appendix in *Addo*, Miller argued that she did, in fact, file those materials on two separate dates, September 15, 2014, and October 4, 2014. Miller asserted that someone in the Appellate Clerk's Office must have tampered with the Judicial Branch website (website) to make it appear that she

had not filed them. In her memorandum of law, Miller accused the Appellate Clerk's Office of "serious misconduct," stating that, "[o]bviously, someone has deliberately manipulated [the] electronic website information in order to justify the claim that no filing has been made by [her]."

In response to Miller's assertions, one of the judges of the Appellate Court explained that the issue was not that Miller had not filed the brief and appendix but, rather, that she had failed to file the certifications that must accompany them pursuant to Practice Book § 67-2 (g),[2] (i),[3] and (j),[4] and, as a consequence, the materials were rejected by the Appellate Clerk's Office. Miller responded that she was not aware that she had not filed the required certifications until early November, 2014, around the time of the order to show cause, and that she subsequently filed the materials on November 10, 2014. The record reveals, however, that, by letter dated September 22, 2014, the Appellate Clerk's Office informed Miller that the brief and appendix she had filed on September 15, 2014, "fail[ed] to comply with the requirements of . . . [§] 67-2 . . . . The electronic submission and the paper filings must be certified [in accordance with that rule of practice] . . . . Please resubmit the electronic version of the brief and appendix containing the required certification. Please submit proper certifications for the printed brief and appendix and please also submit the electronic confirmation receipt for the refiled electronic version." Miller subsequently received a second letter, entitled "SECOND NOTICE," dated October 10, 2014, stating that the brief and appendix still did not comply with the requirements of § 67-2 and, therefore, that they would have to be refiled. As in the first letter, the second letter set forth in detail what Miller needed to do to comply with § 67-2. The letter concluded: "Please immediately resubmit the electronic version of the brief and appendix containing the required certifications for the uploaded brief and appendix. Please immediately submit all of the proper certifications listed [in the second letter] for the printed brief and appendix. Please also submit the electronic confirmation receipt for the refiled electronic version." As of the date of the show cause hearing, Miller had not filed the required certifications and confirmation in *Addo*.

With respect to the claim that she had failed to timely file the brief and appendix in *Cimmino*, Miller argued that she had not filed those materials because she did not discover until the week that they were due that the trial transcript, which had been delivered to her more than one year before the show cause hearing, was incomplete, and, according to Miller, she could not complete the brief without the missing transcript pages. The record reveals that, prior to the issuance of the order to show cause, Miller had been granted two extensions of time to file the appendix and brief. Miller was

granted a four month extension on September 24, 2013, followed by a six month extension on December 16, 2013, with a due date for the brief and appendix of July 1, 2014. Six weeks after that date, on August 19, 2014, Miller requested a third extension, which the Appellate Court denied. On August 26, 2014, the Appellate Court issued an order nisi to Miller advising her that the appeal in *Cimmino* would be dismissed if the brief and appendix were not filed by September 9, 2014. The record indicates that, at the time of the December 3, 2014 show cause hearing, those materials still had not been filed.

Miller also presented argument in support of her motion in *Willis* to open the dismissal of that appeal. The Appellate Court dismissed the appeal after Miller failed to respond to a July 31, 2014 order nisi informing her that the appeal would be dismissed if, by August 11, 2014, she did not file a certificate indicating the estimated date of delivery of the transcript pursuant to Practice Book § 63-8 (b). Miller, a solo practitioner, explained that she was out of the country when the order was issued and that the appeal was dismissed before she returned. Miller further explained that the transcript in question had been filed with the Appellate Court on February 24, 2014, in connection with an earlier appeal in the case, which the Appellate Court had dismissed for lack of a final judgment. Miller explained that, after obtaining a final judgment, she refiled the appeal without realizing that she had to refile the transcript and certification. Miller argued that the mere failure to file those documents should not serve as a ground for imposing sanctions or for the dismissal of the appeal. In response, opposing counsel argued that, if Miller's only misstep in *Willis* had been a failure to file the transcript and corresponding certification, then she would agree that a dismissal would be too severe a sanction. Opposing counsel argued, however, that there were many other examples of Miller's failure to diligently prosecute the appeal, including Miller's failure to appear at a previously scheduled hearing and her act of falsely certifying that certain documents had been sent to opposing counsel. When a judge of the Appellate Court asked Miller, at the show cause hearing, whether, prior to leaving the country, she had made arrangements for another attorney to cover her practice, Miller responded that she had not done so because she did not believe that there was any reason to make such arrangements. When asked what assurance she could provide the court that such lapses would not occur in the future, Miller stated that, because of her limited resources as a solo practitioner, she could assure the court only that she would try to find someone to cover her practice on a pro bono basis if she were to travel again for an extended period of time. Miller also admonished the court that, "[r]ather than being sanctioned, [she] should be commended" for her work because, according to Miller, all of her appellate work

is performed on a pro bono basis. Miller further indicated that the Appellate Court's treatment of her appeared to be racially motivated and reminded her of how she was treated in the late 1970s as a court employee in Georgia.

Finally, the Appellate Court considered the defendant's motion for attorney's fees in *Coble* as well as Miller's argument that sanctions were unwarranted in that case because the appeal was not frivolous. The record reveals that the action in *Coble* was originally brought in May, 2009. In July, 2010, the trial court rendered a judgment of nonsuit on the basis of the plaintiff's failure to, inter alia, comply with the defendant's request to revise. See Practice Book § 10-37. Miller, on behalf of the plaintiff, thereafter filed a motion to open the judgment pursuant to General Statutes § 52-212 (a), which was denied. That ruling was appealed to the Appellate Court, which determined that the trial court did not abuse its discretion in denying the motion to open the judgment and, accordingly, affirmed the trial court's judgment.[5]

In 2013, Miller refiled the action in *Coble* on behalf of the plaintiff in that case pursuant to the accidental failure of suit statute, General Statutes § 52-592. Thereafter, the defendant filed a motion for summary judgment. In a deposition of Miller taken in connection with that motion, she stated that the original action had failed because, as a solo practitioner, she had no one to teach her the "ins and outs" of Connecticut practice, and, as a result, she was "ignorant" of the rules of practice. Miller also stated that she was overwhelmed by work in her practice and had adopted a "hit or miss" approach to civil procedure.

The trial court granted the defendant's motion for summary judgment in *Coble*. In a subsequent articulation of its ruling, the court explained that the nonsuit in the original action was not the result of mistake, inadvertence or excusable neglect, and, therefore, Miller could not rely on the accidental failure of suit statute to refile the action. Specifically, the court stated: "In reading the extensive history outlined by the defendant in the initial motion and a review of the Appellate Court's [decision] denying the plaintiff's motion to set aside a dismissal of the previous matter, it is obvious that [Miller] appears [to have] exhibited an inherent failure to comply throughout the previous matter, as [w]as [n]oted by the Appellate Court, as well as failure to comply with various orders of [the trial] court. It was on that basis [that the trial] court found [and] does find again that, as a matter of law, the termination of the previous matter was not the result of mistake, inadvertence, or excusable neglect." The trial court also granted the defendant's motion for a special finding pursuant to General Statutes § 52-226a[6] that the second action was meritless and not brought in good faith.

Miller, on behalf of the plaintiff in *Coble*, appealed to the Appellate Court, claiming that the trial court incorrectly determined that the earlier nonsuit was not the result of mistake, inadvertence or excusable neglect and, as a result, also improperly concluded that the accidental failure of suit statute did not apply. Thereafter, the defendant in *Coble* filed a motion to dismiss the appeal as frivolous, which the Appellate Court granted. In its order dismissing the appeal, the Appellate Court stated that "[t]he entire panel recommends that the full court [also] consider the imposition of sanctions against [Miller]." At the December 3, 2014 hearing to show cause, Miller argued that such sanctions were unwarranted because reasonable minds could differ as to whether the appeal was frivolous, as evidenced by the fact that one of the judges of the Appellate Court had voted to deny the defendant's motion to dismiss the appeal.

On December 9, 2014, the Appellate Court issued an order stating that, "[a]fter reviewing . . . Miller's conduct in [*Coble*, *Willis*, *Cimmino* and *Addo*], the Appellate Court has determined that [Miller] has exhibited a persistent pattern of irresponsibility in handling her professional obligations before [the Appellate] [C]ourt. . . . Miller's conduct has included the filing of [a] frivolous [appeal] and the failure to file, or to file in timely and appropriate fashion, all documents and materials necessary for the perfection and prosecution of appeals before [the Appellate] [C]ourt.

"[Miller's] conduct . . . has threatened the vital interests of her own clients while consuming an inordinate amount of [the Appellate] [C]ourt's time and her opponents' resources. . . . Miller has neither accepted personal responsibility for the aforesaid conduct nor offered [the] court any assurance that such conduct will not be repeated, based [on] either her commitment to improving her knowledge of appellate practice and procedure or her institution of changes in her law practice to monitor her cases more effectively and ensure timely compliance with [the] rules of procedure." In light of the foregoing, the Appellate Court suspended Miller from practice before that court for a period of six months with the exception of the appeal in *Addo*. The court further ordered that Miller, before being reinstated to practice before the court, be required to file a motion for reinstatement that includes an affidavit in which she (1) "commits herself to discharging her professional responsibilities before [the Appellate] [C]ourt in a timely and professional manner," (2) "provides documentary proof of successful completion of a seminar on legal ethics and a seminar on Connecticut appellate procedure," (3) "documents any other efforts since the date of [the court's] order to improve her knowledge of appellate practice and procedure," and (4) "offers [the court] detailed, persuasive assurances

that she has implemented changes in her law practice designed to ensure full compliance with the rules of appellate procedure, including a written plan indicating what procedures she has implemented in her office to ensure her compliance with the appellate rules and procedures and to protect her clients' interests." Finally, the Appellate Court ordered "that these matters [be] referred to the Chief Disciplinary Counsel for review and further action as it is deemed appropriate."

In separate simultaneous orders, the Appellate Court dismissed the appeal in *Cimmino*, denied the plaintiff's motion to open the dismissal of the appeal in *Willis*, and denied the defendant's motion for attorney's fees in *Coble*.[7] The Appellate Court permitted Miller to continue prosecuting the appeal in *Addo*, however, as long as Miller filed, within ten days of the issuance of the court's order, the missing "certifications . . . [and] a copy of the November 10, 2014 electronic confirmation receipt indicating that the brief and appendix were submitted electronically in compliance with Practice Book [§] 67-2 (g) . . . ." When Miller failed to file those documents in a timely manner, however, the Appellate Court dismissed the appeal in *Addo* as well.

In her writ of error, Miller claims that the Appellate Court abused its discretion in suspending her from practice before that court because the conduct for which she was sanctioned does not violate rule 8.4 of the Rules of Professional Conduct,[8] which, in Miller's view, provides the exclusive list of misconduct for which an attorney may be sanctioned. Indeed, Miller contends that "[t]here have been no reported cases found [in which] Connecticut courts have sanctioned an attorney for alleged failures to comply with rules of appellate procedure such as filing deadlines, electronic filing requirements, or the filing of a transcript." Miller also argues that the sanctions that the Appellate Court imposed, namely, a six month suspension, referral to the Chief Disciplinary Counsel for consideration of whatever further action might be appropriate, and dismissal of Miller's four Appellate Court cases, were disproportionate to the alleged misconduct. Miller maintains, in fact, that a close examination of each of those cases "shows no irresponsibility" on her part. We are not persuaded by Miller's claims.

It is beyond dispute that courts "[have] the authority to regulate the conduct of attorneys and [have] a duty to enforce the standards of conduct regarding attorneys." *Bergeron* v. *Mackler*, 225 Conn. 391, 397, 623 A.2d 489 (1993); see also *Gionfrido* v. *Wharf Realty, Inc.*, 193 Conn. 28, 33, 474 A.2d 787 (1984) ("[i]t is an inherent power of the court to discipline members of the bar, and to provide for the imposition of reasonable sanctions to compel the observance of its rules" [internal quotation marks omitted]). "There are three possible sources for the authority of courts to sanction counsel and pro se

parties. These are inherent power, statutory power, and the power conferred by published rules of the court. The power of a court to manage its dockets and cases by the imposition of sanctions to prevent undue delays in the disposition of pending cases is of ancient origin, having its roots in judgments . . . entered at common law . . . and dismissals . . . . That power may be expressly recognized by rule or statute but it exists independently of either and arises because of the control that must necessarily be vested in courts in order for them to be able to manage their own affairs so as to achieve an orderly and expeditious disposition of cases." (Internal quotation marks omitted.) *Srager* v. *Koenig*, 42 Conn. App. 617, 620, 681 A.2d 323, cert. denied, 239 Conn. 935, 936, 684 A.2d 709 (1996); see also *Briggs* v. *McWeeny*, 260 Conn. 296, 335, 796 A.2d 516 (2002) ("[a] court is free to determine in each case, as may seem best in light of the entire record before it, whether a sanction is appropriate and, if so, what the sanction should be" [emphasis omitted; internal quotation marks omitted]).

Disciplinary proceedings are "for the purpose of preserving the courts of justice from the official ministration of persons unfit to [practice] in them." *Ex parte Wall*, 107 U.S. 265, 288, 2 S. Ct. 569, 27 L. Ed. 552 (1883). "The proceeding to . . . [suspend] an attorney is neither a civil action nor a criminal proceeding, but is a proceeding sui generis, the object of which is not the punishment of the offender . . . but the protection of the court. . . . Once the complaint is made, the court controls the situation and procedure, in its discretion, as the interests of justice may seem to it to require. . . . [T]he power of the courts is left unfettered to act as situations, as they may arise, may seem to require, for efficient discipline of misconduct and the purging of the bar from the taint of unfit membership. [Statutes governing attorney discipline] are not restrictive of the inherent powers [that] reside in courts to inquire into the conduct of their own officers, and to discipline them for misconduct. . . . In [disciplinary] proceedings . . . therefore, the attorney's relations to the tribunal and the character and purpose of the inquiry are such that unless it clearly appears that [the attorney's] rights have in some substantial way been denied him, the action of the court will not be set aside upon review." (Citations omitted; internal quotation marks omitted.) *Statewide Grievance Committee* v. *Rozbicki*, 211 Conn. 232, 238–39, 558 A.2d 986 (1989), cert. denied, 502 U.S. 1094, 112 S. Ct. 1170, 117 L. Ed. 2d 416 (1992). "As with any discretionary action of the . . . court, appellate review requires every reasonable presumption in favor of the action, and the ultimate issue . . . is whether the . . . court could have reasonably concluded as it did. . . . Therefore, whether this court would have imposed a different sanction . . . is irrelevant." (Citations omitted; internal quotation marks omitted.) *Thal-*

*heim* v. *Greenwich*, 256 Conn. 628, 656, 775 A.2d 947 (2001). A uniform standard of clear and convincing evidence applies to attorney disciplinary proceedings, "regardless of the nature of the sanction ultimately imposed." *Statewide Grievance Committee* v. *Presnick*, 215 Conn. 162, 171–72, 575 A.2d 210 (1990).

Applying the foregoing principles to the facts of the present case, we conclude that the Appellate Court did not abuse its discretion in suspending Miller from the practice of law before that court for a period of six months on the basis of her repeated failure to meet deadlines, to comply with the rules of practice, and for filing a frivolous appeal. See, e.g., *Srager* v. *Koenig*, supra, 42 Conn. App. 621–24 (attorney suspended from practice before Appellate Court for six months on basis of repeated noncompliance with rules of practice and failure to timely file court documents). This court previously has observed that, "[i]n order to fulfill our responsibility of dispensing justice we in the judiciary must adopt an effective system of caseflow management. Caseflow management is based [on] the premise that it is the responsibility of the court to establish standards for the processing of cases and also, when necessary, to enforce compliance with such standards. Our judicial system cannot be controlled by the litigants and cases cannot be allowed to drift aimlessly through the system." *In re Mongillo*, 190 Conn. 686, 690–91, 461 A.2d 1387 (1983), overruled in part on other grounds by *State* v. *Salmon*, 250 Conn. 147, 735 A.2d 333 (1999). Thus, General Statutes § 51-84 (a) provides that "[a]ttorneys admitted by the Superior Court shall be attorneys of all courts and shall be subject to the rules and orders of the courts before which they act." Section 51-84 (b) provides that "[a]ny such court may fine an attorney for transgressing its rules and orders an amount not exceeding one hundred dollars for any offense, and may suspend or displace an attorney for just cause." Practice Book § 85-2, in turn, provides in relevant part that, in the appellate courts, "[a]ctions which may result in the imposition of sanctions include, but are not limited to," the "[f]ailure to comply with rules and orders of the court," "[r]epeated failures to meet deadlines," and the "[p]resentation of a frivolous appeal or frivolous issues on appeal." Practice Book § 85-2 further provides that "[o]ffenders will be subject, at the discretion of the court, to appropriate discipline, including the prohibition against appearing in the court or filing any papers in the court for a reasonable and definite period of time . . . ."

Thus, Miller's contention that rule 8.4 of the Rules of Professional Conduct provides the exclusive list of misconduct for which an attorney may be sanctioned is patently frivolous. Nor is the present case, as Miller argues, the first in which an attorney has been sanctioned by a Connecticut court for failing to comply with the rules or orders of the court. Indeed, our case law is

replete with examples of instances in which our courts have exercised their authority, whether inherent or pursuant to statute or the rules of practice, to sanction an attorney for such conduct. See, e.g., *Thalheim* v. *Greenwich*, supra, 256 Conn. 635, 657 (court did not abuse its discretion in concluding that appropriate sanction for attorney who filed amicus curiae brief without first obtaining permission from court was "to read the Connecticut Practice Book, to listen to audiocassettes available from the Connecticut Bar Association pertaining to civil practice and procedure in Connecticut courts, and to certify to the court within four months that he had listened to the tapes and read the entire Connecticut Practice Book, including the rules concerning professional conduct" [internal quotation marks omitted]); *CFM of Connecticut, Inc.* v. *Chowdhury*, 239 Conn. 375, 386, 685 A.2d 1108 (1996) (appeal was dismissed on basis of attorney's failure to comply with rules of practice and court's order nisi), overruled in part on other grounds by *State* v. *Salmon*, 250 Conn. 147, 735 A.2d 333 (1999); see also *Gionfrido* v. *Wharf Realty, Inc.*, supra, 193 Conn. 31, 34 (trial court did not abuse its discretion in dismissing case on basis of attorney's failure to appear for voir dire); *In re Mongillo*, supra, 190 Conn. 690 ("It is undisputed that a rule of the Superior Court required the appellant's attendance at the call of the calendar at 10 a.m. It is also undisputed that he was late. It is therefore not open to question that the Superior Court had the authority to impose a fine against the appellant for his tardiness."); *Venezia* v. *Kennedy*, 165 Conn. 183, 184–85, 332 A.2d 102 (1973) (trial court did not abuse its discretion in dismissing case due to plaintiff's failure to prosecute case diligently).

In her brief to this court, Miller attempts to minimize the professional lapses that ultimately convinced the Appellate Court that it had no choice but to suspend her temporarily from practice before that court. She also argues that the record belies that court's determination that she exhibited a persistent pattern of irresponsibility in the handling of her cases. Miller's arguments reveal a disturbing disregard for or ignorance of the facts underlying this case. With respect to *Cimmino*, Miller argues that there is "no clear and convincing evidence that [she] knowingly or intentionally violated any appellate rule of practice." Miller further maintains that "[t]he essence of the [A]ppellate [Court's] finding against [her] is that the trial [transcript was] . . . not timely ordered." Contrary to Miller's assertion, the Appellate Court did not dismiss the appeal in *Cimmino* because the transcript was not timely ordered. The Appellate Court dismissed the appeal because, after granting Miller two extensions to file the brief and appendix, she failed to file them when they were due on July 1, 2014. Instead, Miller waited six weeks and then filed a motion for an additional extension of time,

which the Appellate Court had little choice but to deny pursuant to Practice Book § 66-1 (e), which provides: "A motion for extension of time shall be filed at least ten days before the expiration of the time limit sought to be extended or, if the cause for such extension arises during the ten day period, as soon as reasonably possible after such cause has arisen. *No motion under this rule shall be granted unless it is filed before the time limit sought to be extended by such motion has expired.*" (Emphasis added.) Thus, on August 26, 2014, the court informed Miller that the appeal would be dismissed if the brief and appendix were not filed within two weeks. As we previously noted, Miller missed that deadline as well.

With respect to *Addo*, Miller contends that the Appellate Court incorrectly concluded that she failed to file her brief and appendix in a timely manner. Miller maintains that "[o]ne or more persons with access to the [court's] official website appear to have tampered with the documents in order to give an appearance of a failure to file by [Miller]." Miller further argues that it is "shocking that the court should have so little regard for the integrity of its official website and documents and yet [admonish Miller] for alleged procedural violations." On the contrary, what is shocking is Miller's persistence in making such reckless allegations when even a cursory review of the file in *Addo* reveals that they are wholly unfounded. As we previously indicated, prior to the issuance of the order to show cause in *Addo*, Miller was notified by the Appellate Court on two separate occasions that the brief and appendix she previously had filed in that case were not compliant with Practice Book § 67-2 and would have to be refiled. In light of these notices, which we can only assume Miller ignored or did not read, her repeated assertion that the brief and appendix were removed from the website in an effort to damage her credibility with the Appellate Court underscores the propriety of that court's determination not only that Miller's handling of her cases threatened the vital interests of her clients, but also that she had demonstrated a regrettable inability to accept personal responsibility for her professional mistakes.

With respect to *Willis*, Miller claims that the sole allegation in that case concerns the transcript that was not timely filed, which, according to Miller, provides insufficient cause for the Appellate Court to have denied her motion to set aside the dismissal of the appeal in that case and to suspend her from practice before that court. As we previously indicated, the record reveals that the Appellate Court dismissed that appeal after Miller, who was out of the country at the time, failed to respond to an order nisi informing her that the appeal would be dismissed if she did not file the transcript certifications required by Practice Book § 63-8 (b) within ten days. In response to questioning by the court,

Miller stated that, prior to leaving the country, she had not arranged for anyone to cover her practice. She also did not dispute opposing counsel's assertion that her failure to file the transcript was not her only miscue in *Willis* but one of many, which included her failure to appear at a scheduled hearing and the filing of a false certification stating that certain documents had been sent to opposing counsel when, in fact, they had not. More important, as the Appellate Court noted, when Miller was asked to provide assurances to the Appellate Court that such conduct would not be repeated going forward, Miller could offer no such assurances. In light of the foregoing, the Appellate Court did not abuse its discretion in denying the motion to set aside the dismissal of the appeal in *Willis*. Nor did it abuse its discretion in considering Miller's transgressions in *Willis* as further reason to suspend her from practice before the Appellate Court until such time as she improved her knowledge of the appellate rules of practice and could offer that court persuasive assurances that she would implement the necessary changes in her law practice to ensure compliance with those rules.

Miller next maintains that the Appellate Court improperly sanctioned her for filing a frivolous appeal in *Coble*. We note that Miller did not file a petition for certification to appeal from the judgment of the Appellate Court dismissing the appeal but, instead, attempts to collaterally attack that judgment in this writ of error by arguing that the appeal was not frivolous. As we previously indicated, after the Appellate Court affirmed the trial court's judgment of nonsuit in *Coble* on the basis of Miller's failure to comply with the defendant's request to revise, Miller refiled the action in *Coble* pursuant to the accidental failure of suit statute. The defendant then moved for summary judgment on the ground that that statute did not apply because Miller's noncompliance with the rules of practice in the earlier filed action in *Coble* was not the result of mistake, inadvertence, or excusable neglect.[9] In its memorandum of law in support of its motion for summary judgment, the defendant in *Coble* outlined in painstaking detail the torturous procedural history culminating in the judgment of nonsuit. In granting the motion for summary judgment in *Coble*, the trial court specifically relied on that history, as outlined in the defendant's motion for summary judgment, as the basis for its determination that the plaintiff in *Coble* could not avail herself of the accidental failure of suit statute. The trial court subsequently supplemented its decision with a special finding pursuant to § 52-226a that the refiled action in *Coble* was meritless and not brought in good faith. Miller did not seek an articulation of that finding.

On appeal to the Appellate Court from the granting of summary judgment in *Coble*, Miller did not challenge the trial court's determination that the action was meritless and not brought in good faith. Instead, she argued

that the trial court incorrectly concluded that the accidental failure of suit statute did not apply because, according to Miller, her failure to comply with the rules of practice when she filed the initial action in *Coble* was the result of an honest misunderstanding of the applicable rules. Because Miller failed to challenge the trial court's determination that the refiled action in *Coble* was without merit and not brought in good faith, however, the Appellate Court properly credited that determination and granted the defendant's motion to dismiss the appeal as frivolous. In her writ of error, Miller again fails to explain why the trial court's judgment regarding the merits of the refiled action in *Coble* was improper. We, therefore, like the Appellate Court, have no occasion to disturb that determination.

Finally, Miller claims that the Appellate Court abused its discretion in referring her to the Chief Disciplinary Counsel without alleging the violation of any Rule of Professional Conduct or otherwise providing guidance as to the nature of the inquiry to be conducted. Miller also expresses concern that the referral could result in duplicative sanctions for the conduct described herein.

Although the order of referral could have been clearer, we do not understand it to be a request for an investigation into the specific conduct giving rise to this writ of error but, rather, a request for a determination of whether Miller's conduct before the Appellate Court was part of a larger pattern of irresponsibility in Miller's handling of her professional obligations. As we have previously noted, "[j]udges . . . possess the inherent authority to regulate attorney conduct and to discipline members of the bar. . . . In exercising their inherent supervisory authority, the judges have authorized grievance panels and reviewing committees to investigate allegations of attorney misconduct and to make determinations of probable cause. . . . In carrying out these responsibilities, these bodies act as an arm of the court. . . . Accordingly, a formidable array of [actions], including referrals to the [S]tatewide [G]rievance [C]ommittee for investigation into alleged misconduct, is available to courts and dissatisfied litigants who seek redress in connection with an attorney's . . . conduct." (Citations omitted; footnotes omitted; internal quotation marks omitted.) *Simms* v. *Seaman*, 308 Conn. 523, 552–54, 69 A.3d 880 (2013). The Appellate Court not only has the authority to refer an attorney to the Chief Disciplinary Counsel, it has an obligation to do so when, as in the present case, it concludes that that attorney's persistent pattern of missing deadlines and violating court rules threatens the vital interests of his or her clients. Of course, we do not know whether the Chief Disciplinary Counsel will find instances of neglectful or otherwise unacceptable conduct by Miller in the Superior Court, but, in light of the number and nature of Miller's transgressions in the Appellate Court, the Appellate Court certainly had the discretion to bring

those transgressions to the attention of the Chief Disciplinary Counsel for whatever action, if any, may be appropriate with respect to Miller's conduct in the Superior Court.

The writ of error is dismissed.

In this opinion the other justices concurred.

[1] General Statutes § 51-84 provides: "(a) Attorneys admitted by the Superior Court shall be attorneys of all courts and shall be subject to the rules and orders of the courts before which they act.

"(b) Any such court may fine an attorney for transgressing its rules and orders an amount not exceeding one hundred dollars for any offense, and may suspend or displace an attorney for just cause."

[2] Practice Book § 67-2 (g) provides in relevant part: "Every attorney filing a brief shall submit an electronic version of the brief and appendix in accordance with guidelines established by the court and published on the judicial branch website. The electronic version shall be submitted prior to the timely filing of the party's paper brief and appendix pursuant to subsection (h) of this section. . . . Counsel must certify that electronically submitted briefs and appendices: (1) have been delivered electronically to the last known e-mail address of each counsel of record for whom an e-mail address has been provided; and (2) have been redacted or do not contain any names or other personal identifying information that is prohibited from disclosure by rule, statute, court order or case law."

[3] Practice Book § 67-2 (i) provides: "The original and all copies of the brief filed with the supreme court or the appellate court must be accompanied by: (1) certification that a copy of the brief and appendix has been sent to each counsel of record in compliance with Section 62-7 and to any trial judge who rendered a decision that is the subject matter of the appeal; (2) certification that the brief and appendix being filed with the appellate clerk are true copies of the brief and appendix that were submitted electronically pursuant to subsection (g) of this section; (3) certification that the brief and appendix have been redacted or do not contain any names or other personal identifying information that is prohibited from disclosure by rule, statute, court order or case law; and (4) certification that the brief complies with all provisions of this rule. The certification that a copy of the brief and appendix has been sent to each counsel of record in compliance with Section 62-7, and to any trial judge who rendered a decision that is the subject matter of the appeal may be signed by counsel of record or the printing service, if any. All other certifications pursuant to this subsection shall be signed by counsel of record only."

[4] Practice Book § 67-2 (j) provides: "A copy of the electronic confirmation receipt indicating that the brief and appendix were submitted electronically in compliance with subsection (g) of this section shall be filed with the original brief."

[5] "The [plaintiff] could have challenged the merits of the judgment of dismissal by taking a timely appeal therefrom. On an appeal from a judgment following a denial of a motion to open pursuant to § 52-212 (a), however, the standard of appellate review is whether the trial court's judgment was an abuse of its discretion." *Ruddock* v. *Burrowes*, 243 Conn. 569, 571 n.4, 706 A.2d 967 (1998).

[6] General Statutes § 52-226a provides: "In any civil action tried to a jury, after the return of a verdict and before judgment has been rendered thereon, or in any civil action tried to the court, not more than fourteen days after judgment has been rendered, the prevailing party may file a written motion requesting the court to make a special finding to be incorporated in the judgment or made a part of the record, as the case may be, that the action or a defense to the action was without merit and not brought or asserted in good faith. Any such finding by the court shall be admissible in any subsequent action brought pursuant to section 52-568."

[7] The defendant's motion for attorney's fees in *Coble* was denied without prejudice to the defendant's right to seek such fees in the trial court.

[8] Rule 8.4 of the Rules of Professional Conduct, which sets forth specific behavior that constitutes attorney misconduct, provides: "It is professional misconduct for a lawyer to:

"(1) Violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;

"(2) Commit a criminal act that reflects adversely on the lawyer's honesty,

trustworthiness or fitness as a lawyer in other respects;

"(3) Engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

"(4) Engage in conduct that is prejudicial to the administration of justice;

"(5) State or imply an ability to influence improperly a government agency or official or to achieve results by means that violate the Rules of Professional Conduct or other law; or

"(6) Knowingly assist a judge or judicial officer in conduct that is a violation of applicable rules of judicial conduct or other law."

[9] It is well established that, in order to avail herself of the accidental failure of suit statute, Miller was required "to make a factual showing that the prior dismissal was a matter of form in the sense that the . . . noncompliance with a court order occurred in circumstances such as mistake, inadvertence or excusable neglect . . . [and], even in the disciplinary context, only egregious conduct will bar recourse to [the statute]." (Emphasis omitted; internal quotation marks omitted.) *Worth* v. *Commissioner of Transportation*, 135 Conn. App. 506, 518–19, 43 A.3d 199, cert. denied, 305 Conn. 919, 47 A.3d 389 (2012).